**IN RE Tony ASHAI, Debtor**

**(Kamran Ghadimi M.D. and Haleh Turkaman, Plaintiffs–Appellants**

**v.**

**Tony Ashai, Defendant–Appellee)**

**Case No. LA CV 14–05057–VBF**

United States District Court, C.D. California.

Signed September 29, 2016

Donald W. Sieveke, Donald W. Sieveke Law Offices, Santa Ana, CA, for Plaintiffs–Appellants.

Kamiar Kooshki, Sammy Zreik, Whitbeck Kooshki and Zreik LLP, Torrance, CA, for Defendant–Appellee.

**Proceedings in chambers: Order Denying Creditors' Appeal:**

**Affirming Bankruptcy Court's June 9, 2014 Judgment** that § 523(a)(2)(A) Does <u>Not</u> Render Tony Ashai's Debt Non–Dischargeable;

**Directing Creditors to Show Cause By Friday, October 28, 2016** Why the Court Should Not Find their Appeal to be Frivolous and Award Attorney Fees or Other Damages Under Fed. R. Bankr. P. 8020(a);

**Permitting Debtor–Appellee to Respond By Friday, November 12, 2016;**

**Permitting Creditor–Appellants to Reply by Friday, November 26, 2016**

HONORABLE VALERIE BAKER FAIRBANK, SENIOR UNITED STATES DISTRICT JUDGE

In the United States Bankruptcy Court for the Central District of California

("bankruptcy court"), plaintiff-creditors Kamran Ghadimi, M.D. and his wife Haleh Turkaman (together "Ghadimi") filed a claim seeking to declare that defendant-, debtor Ashai's debt to them was rendered not-dischargeable in bankruptcy pursuant to 11 U.S.C. section 523(a)(2)(A).[1] On May 30, 2014, United States Bankruptcy Judge Robles issued an oral ruling, denying plaintiff-creditors' claim and holding that Ashai's debt to them *was* indeed dischargeable. The bankruptcy judge issued a corresponding judgment in the adversary proceeding on June 9, 2014.

The Ghadimis filed a notice of appeal with the Clerk of the U.S. Bankruptcy Court, and debtor Ashai has not contended that the appeal was untimely under FRBP 8002(a).[2] *See* FRBP 8003(a)(1) ("An appeal from a judgment, order, or decree of a bankruptcy court to a district court or BAP under 28 U.S.C. § 158(a)(1) or (a)(2) may be taken only by filing a notice of appeal with the bankruptcy clerk within the time allowed by Rule 8002.").

As permitted by Fed. R. Bankr. P. 8005, the Ghadimi creditors elected to have a district court hear the appeal rather than the Bankruptcy Appellate Panel of the Ninth Circuit ("BAP"). *See* Fed. R. Bankr. P. 8001(b) (defining BAP as "a bankruptcy appellate panel established by a circuit's judicial council and authorized to hear appeals from a bankruptcy court under 28 U.S.C. section 58"); *cf.* Fed. R. Bankr. P. 8006 (providing for certification of a direct appeal from the bankruptcy court to the United States Court of Appeals).

According to Fed. R. Bankr. P. 8001(a), Part VIII of the Federal Rules of Bankruptcy Procedure "govern the procedure in a United States district court and a bankruptcy appellate panel on appeal from a judgment, order, or decree of a bankruptcy court." This includes Fed. R. Bankr. P. 8001 through 8028.

In deciding this appeal, the Court will apply the Federal Rules of Civil Procedure and Evidence unless the FRBP or Local Bankruptcy Rules provide otherwise. *See* C.D. Cal. L. Bankr. R. 1 with nn. 1–2.

As encouraged by our Federal Rules of Bankruptcy Procedure and our Local Rules Governing Bankruptcy Appeals, Cases, and Proceedings As Amended Effective December 1, 2015 ("C.D. Cal. L. Bankr. R.") 4.1, Ghadimi and Turkaman filed joint briefs on appeal. The Court finds that both the Ghadimi creditors' appellate brief and debtor Ashai's appellee brief comply with the substantive, structural, and length requirements of Fed. R. Bankr. P. 8014 and 8015, and were timely under Fed. R. Bankr. P. 8018.

**For the reasons that follow, the Court will deny the creditors' appeal and affirm the bankruptcy judge's June 9, 2014 Judgment of dischargeability.[3]** Pursuant to FRBP 8019(b)(2), the Court determines that oral argument is unnecessary "be-

---

1. This opinion uses terms consistent with the definitions in Federal Rule of Bankruptcy Procedure 9001 as amended December 1, 2010. The Court has also endeavored to use terms appearing in the Federal Rules of Civil Procedure in accordance with Fed. R. Bank. R. 9002, entitled Meanings of Words in the Federal Rules of Civil Procedure When Applicable to Cases Under the [Bankruptcy] Code.

2. The most recent amendment to Fed. R. Bankr. P. 8002 took effect on December 1, 2014. But the 2014 amendment did not affect the fourteen-day time limit for taking an appeal from a decision of a U.S. Bankruptcy Court. *See* Advisory Committee Note to 2014 Amendment of Fed. R. Bankr. P. 8002.

3. The Court has stated that it is affirming the bankruptcy judge's June 9, 2014 *Judgment*, not his May 30, 2014 *oral ruling* explaining *why* he was denying the creditors' non-dischargeability motion. As discussed below, that oral opinion reached the right outcome but articulated a rationale for the decision that was legally erroneous.

cause ... the dispositive issue or issues have been authoritatively decided."

The Court will deny creditor Ghadimi's appeal on a ground not discussed by the parties' appellate briefs. In *In re Pateel Boyajian, Debtor (New Falls Corp. v. Boyajian)*, 367 B.R. 138 (9th Cir. BAP 2007) (<u>Dunn</u>, Klein, Montali), *aff'd*, 564 F.3d 1088 (9th Cir. 2009) ("*Boyajian*"), the U.S. Court of Appeals for the Ninth Circuit held that a deceptive misrepresentation or omission cannot render a debt nondischargeable under section 523(a)(2)(A) unless the misrepresentation or omission occurred prior to the creditor lending the money and played a role in inducing the creditor to lend the money. According to *Boyajian*, if the misrepresentation occurred *after* the creditor lent the money, it cannot be said that the loan was "obtained by" the misrepresentation as required for non-dischargeability under section 523(a)(2). Here, even according to the creditors' version of events, all of the alleged misrepresentations or omissions by Ashai occurred *after* Vineyard Bank (the creditors' predecessor) extended the loan at issue.

The Bankruptcy Court's stated rationale for the dischargeability ruling was erroneous. The Bankruptcy Court—like the parties—proceeded on the erroneous legal premise that a debtor's *post-loan-issuance* fraud can render a loan debt non-dischargeable under section 523(a)(2). The Ninth Circuit's decision in *Boyajian* expressly rejects and logically forecloses that premise.

Nonetheless, the Bankruptcy Court was right to deny the Ghadimi creditors' section 523(a)(2)(A) non-dischargeability claim. *See Lambert v. Blodgett*, 393 F.3d 943, 965 (9th Cir. 2004) ("We may affirm the district court's decision on any ground supported by the record, even if it differs from the district court's rationale.") (citing *Paradis v. Arave*, 240 F.3d 1169, 1175–76

(9th Cir. 2001)); *see, e.g., IMO Daniel Lee Ritz Jr., Debtor (Husky Int'l Electronics, Inc. v. Ritz)*, 832 F.3d 560, 564 (5th Cir. 2016) ("On appeal, the district court affirmed the judgment of the bankruptcy court but for different reasons than those given by the bankruptcy court."); *cf., e.g., In re Keeley & Grabanski Land P'ship, Debtor (Kaler as Trustee v. Slominski)* and 832 F.3d 853, 858 (8th Cir. 2016) ("The BAP corrected the bankruptcy court's calculation of the setoff ... but affirmed the bankruptcy court's ruling that the newly discovered evidence would not likely have produced a different result at a new trial.").

## BINDING AND PERSUASIVE AUTHORITIES IN A BANKRUPTCY APPEAL

██ Today's Order cites decisions of the United States Bankruptcy Appellate Panel of the Ninth Circuit ("BAP"). The BAP's decisions, however, do not bind the federal district courts and are cited only for their logical persuasive value. *See Medina v. Vander Poel*, 523 B.R. 820, 828 (E.D. Cal. Jan. 21, 2015) ("[The] holdings of bankruptcy appellate courts are not binding on federal district courts.") (citing *Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir.1990)), *appeal dismissed*, No. 15–15301 (9th Cir. May 11, 2015). *Accord Morris v. Ark Valley Credit*, 536 B.R. 887, 895 n.3 (D. Kan. 2015) (Marten, J.) ("Decision[s] of the B.A.P. are not binding on this court.") (citing *Weber v. United States*, 484 F.3d 154, 157 (2d Cir. 2007) and *In re Barakat*, 173 B.R. 672 (C.D. Cal. Bankr. 1994)); *see also* "Precedential Effect of Bankruptcy Court, Bankruptcy Appellate Panel, or District Court Bankruptcy Case Decisions", 8 A.L.R. Fed. 2d at 168–69. "Indeed, in enacting the [title 11 U.S.C.] section 158(d)(2) amendments, Congress emphasized that 'decisions rendered by a district court as well as a bankruptcy appellate panel are gener-

ally not binding and lack stare decisis value.'" *In re Revel AC, Inc. et al., Debtors (Idea Boardwalk, LLC v. Revel AC, Inc.)*, 2015 WL 333341, \*3 (D.N.J. Jan. 23, 2015) (quoting *Weber*, 484 F.3d at 158 (quoting H.R. Rep. No. 109–31(1) at 148 (2005)).

■ The decision which compels affirmance today is a published panel opinion of our U.S. Court of Appeals. That decision is precedentially binding on this Court. "[A] published decision of [the Ninth Circuit] constitutes binding authority which must be followed unless and until overruled by a body competent to do so." *State Farm Fire & Cas. Ins. Co. v. GP West, Inc.*, 2016 WL 3189187, \*10, 190 F.Supp.3d 1003, 1018 (D. Haw. June 7, 2016) (citation and internal quotation marks omitted). *See Lair v. Bullock*, 798 F.3d 736, 747 (9th Cir. 2015) ("[W]e are bound by a prior three-judge panel's published opinions, ....") (citing *Miller v. Gammie*, 335 F.3d 889, 892–93 (9th Cir. 2003) (en banc)); *United States v. Sanchez*, 2013 WL 8291618, \*5 n.3 (C.D. Cal. Nov. 7, 2013) (Fairbank, J.) ("This Court is bound only by U.S. Supreme Court holdings and *published* Ninth Circuit decisions.").

BACKGROUND: Plaintiff Ghadimi's Predecessor Loaned Money to the LLC, Guaranteed By Defendants Ashai and Youssefzadeh

On October 26, 2006, Tony Ashai ("Ashai") and Emil Youssefzadeh ("Youssefzadeh") personally guaranteed a construction loan in the amount of $4.241 million ("the loan") from Vineyard Bank N.A. ("the bank"), executing a promissory note and a deed of trust against the parcel of land known as 374 West Eighth Street in San Pedro, California ("the property"). Ashai and Youssefzadeh created a limited liability corporation named 374 West Eighth Street, LLC ("the LLC"). *See* FAC at 2 ¶¶ 5–6; *see also* Joint Pretrial Order Issued by Bankruptcy Judge Earl Robles on

January 17, 2014 ("JO") ¶¶ (A)1–(A)3. Ashai and Youssefzadeh wanted to construct eighteen townhouses on the property, JO ¶¶ (A)1

On April 11, 2008, the parties modified the Construction Deed of Trust by an instrument recorded on April 29, 2008, increasing the loan amount from $4.241 million to $4.856 million, *see* JO at 2 ¶ 4.

In December 2008, Youssefzadeh decided to sell his interest in the property/LLC. To effectuate this decision, Youssefzadeh signed a Settlement and Indemnity Agreement wherein (1) he gave Ashai authority to act in his place and (2) he agreed to hold Ashai harmless for any default. *See* Ashai Ex 5 (Defs' Trial Ex C).

BACKGROUND: Plaintiff Ghadimi's Predecessor Sues to Foreclose on the Property in State Court, But Defendant Ashai Files for Bankruptcy

On March 5, 2009, Vineyard Bank filed an action for judicial foreclosure against the loan's guarantors (Ashai and Youssefzadeh), and against the LLC created by Ashai and Youssefzadeh, in L.A. County Superior Court case number BC–409044. *See* JO ¶ 6; FAC at 2 ¶ 7. On March 26, 2009, the Superior Court judge appointed a receiver for the encumbered property, FAC at 2 ¶ 8. On April 30, 2009, defendants LLC, Ashai, and Youssefzadeh jointly filed an amended answer to the bank's foreclosure complaint, JO at 2 ¶ (A)7.

On October 21, 2009, Vineyard Bank sold and assigned to Turkaman (Ghadimi's wife) the promissory note secured by the deed of trust for the Ashai/Youssefzadeh LLC (which assignment was subsequently corrected by a separate recorded instrument). Accordingly, the Superior Court judge substituted the Ghadimis as plaintiffs-creditors in the stead of the bank on December 8, 2009. *See* FAC at 2 ¶ 9 and Pretrial Order ¶ (A)8.

On March 15, 2010, the Ashai/Youssefzadeh LLC filed a petition in the United

States Bankruptcy Court for the Central District of California for protection under Title 11—Chapter 11 of the United States Code; the case, number 2:10–bk–19554–ER, was assigned to U.S. Bankruptcy Judge Earl Robles. *See* JO ¶ (A)9.

Within that bankruptcy action, defendant-debtors Tony Ashai, Youssefzadeh, and Athar Ashai (represented by Clifford and Clarkson) jointly initiated their own adversary proceeding on June 9, 2010 against Ghadimi, Turkaman, and "Robb Evans LLC." *See* JO ¶ (A)10 and Ashai Ex 6 (Defs' Trial Ex G). The Ashai Parties asserted causes of action for Determination of Validity, Priority and Extent of Lien, Disallowance of Receiver Claim, Disallowance of Turkaman Claim, Equitable Subordination of Lien and Claims; Breach of Fiduciary Duty; Aiding and Abetting Breach of Fiduciary Duty; Negligence; Recovery under Bond; Breach of Contract; Fraud; and Civil Conspiracy, *see* JO at 3 ¶ (A)10.

**A settlement conference took place on July 14, 2010.** Creditor Ghadimi was present, but apparently not creditor Turkaman; attorneys Yap and Bradshaw were present on behalf of creditors. Debtor Tony Ashai was present, but apparently not debtors Athar Ashai and Youssefzadeh; attorneys Clifford and Clarkson were present on behalf of the debtors. *See* JO at 3 ¶A(11) (*"Among* [sic] the persons present at that meeting were . . . .").

**The parties agree that during negotiations on that date, Tony "represented** that he spoke on behalf of all the 'Ashai Parties,'** . . . meaning Tony Ashai, Athar Ashai, and Emil Youssefzadeh . . . ." JO ¶ (A)12.

The parties also agree that "[a]t all times during the negotiations for settlement, Tony Ashai represented to Plaintiffs that Emil Youssefzadeh knew and consented to him, Tony, negotiating on behalf of Emil Youssefzadeh", JO at 3 ¶ (A)13; *see also* FAC at 3–4 ¶ 17 (alleging Tony further "represented to Plaintiffs that he was authorized to negotiate on behalf of himself, Athar Ashai, and Emil. He further represented to Plaintiffs that Emil was aware of the negotiations and authorized Tony to negotiate a settlement on his behalf.").

The Ghadimis allege that these statements by Ashai were false, and that Ashai *knew* the statements were false when he made them. *See* FAC at 4 ¶ 18. Namely, Ashai knew that "[t]he signature placed above Emil's name on the Settlement Agreement was handwritten by Tony, not Emil"; that "Emil was not aware of the settlement negotiations, nor did he authorize Tony to negotiate on his behalf"; and that "Emil did not approve the Settlement Agreement." FAC at 4 ¶ 19.

■ **According to the Ghadimis, Ashai made those false representations and misleading omissions with the specific intention** of inducing them to conduct a non-judicial foreclosure (waiving their right to a deficiency judgment against Youssefzadeh)[4] *and* with the intent to ex-

---

**4.** "[C]ourts are generally not authorized to intervene in the non-judicial foreclosure process established by California law. As explained in *Gomes* [*v. Countrywide Home Loans, Inc.*, 192 Cal.App.4th 1149, 121 Cal. Rptr.3d 819 (Cal. App.), *review denied* (Cal. May 18, 2011)], 'the policy behind non-judicial foreclosure [is] providing a quick, inexpensive and efficient remedy.'" *Petrovich v. Ocwen Loan Servicing, LLC*, 2016 WL 555959, *5 (N.D. Cal. Feb. 12, 2016) (quoting *Hills v.* *Mortgage Electronic Regis. Sys., Inc.*, No. 15–cv–05108–EMC, 2016 WL 454093, *10 (N.D. Cal. Feb. 5, 2016) (Chen, J.), *appeal filed*, No. 16–15281 (9th Cir. 24, 2016)), *appeal filed*, No. 16–15396 (9th Cir. Mar. 10, 2016).

The process, also known as *extra*-judicial foreclosure, takes about four months from start to finish. *See Hwang*, 189 B.R. at 790 (citing Calif. Civil Code sections 2924 through 2924k). For a summary of the California stat-

tricate Youssefzadeh from liability on the Bank loan, FAC at 5 ¶ 22. The Ghadimis argue that they were significantly harmed because the real estate foreclosed upon was in California and under California state law, a creditor who conducts a non-judicial foreclosure thereby gives up his right to pursue the debtor for any deficiency. *See In re Hwang, Debtor (Hwang v. Stearns)*, 189 B.R. 786, 790 (Bankr. C.D. Cal. 1995) (Bufford, Bankr. J.) (*"Hwang"*) ("In exchange for using this highly efficient foreclosure procedure for deeds of trust, the foreclosing creditor must give up any right to claim a deficiency.") (citing *Calif. Civ. Pro. Code* section 580d (West 1982) and *Passanisi v. Merit–McBride Realtors, Inc.*, 190 Cal.App.3d 1496, 236 Cal.Rptr. 59, 73 (1987)).

**The Ghadimis explain why they believed Ashai's false representations, and why it was justifiable to rely on those misrepresentations:**

The Plaintiffs justifiably relied upon Tony's representations since attorneys who represented Emil [Youssefzadeh] participated in the settlement negotiations.

The Plaintiffs also relied on the fact that the Settlement Agreement was framed as an agreement between the Plaintiffs and the "Ashai Parties", which was defined in the Settlement Agreement as consisting of Tony, Athar [Ashai], and Emil [Youssefzadeh]. At no time did Emil nor any attorney or any other party ever advise the Plaintiffs that Emil was not a party to the negotiations or that Emil had not signed the Settlement Agreement. As a result, the Plaintiffs believed that Emil had consented to the Settlement Agreement and had executed it.

utory procedure, *see Moeller v. Lien*, 25 Cal. App.4th 822, 30 Cal.Rptr.2d 777, 782 (Cal.

FAC at 4 ¶ 20. *See also* JO at 3 ¶¶ (A)14–15 (parties agree that "[d]uring the time the Settlement Agreement was negotiated and drafted, attorneys purporting to represent Emil Youssefzadeh, Tony Ashai, and Athar Ashai participated in the negotiation and drafting of the Settlement Agreement" and that "[a]t all times Plaintiffs believed that Tony Ashai was authorized to negotiate the Settlement ... on behalf of Emil Youssefzadeh.").

**The creditors (Ghadimi & Turkaman) and the debtors (the three Ashai Parties) drafted a tentative settlement agreement and "term sheet" that same day, July 14, 2010.** *See generally Starr Int'l Co., Inc. v. United States*, 121 Fed.Cl. 428, 472 (2015) ("[A] term sheet is a 'classic example of an unenforceable mere agreement to agree', ....") (citation and other internal quotation marks omitted); *Rock v. Rangos*, 61 A.3d 239, 246 (Pa. Super. 2013) ("A term sheet is not a contract. It is a non-binding summary of terms subject to further refinement and due diligence."), *appeal denied*, 622 Pa. 761, 80 A.3d 778 (2013) (table decision). According to creditor Ghadimi, the draft settlement agreement was "subject to the understanding that a formal Settlement Agreement would be forthcoming." Ghadimi Brief (Doc 8) at 5 (citing Excerpt 6—attorney Yap's testimony (Trial Transcript for May 29 ("TT1") at 129:22 through 130:1) and creditor Ghadimi's testimony (TT1 at 40:5–8)).

During that day, creditor Ghadimi and debtor Ashai signed a Term Sheet. *See* the Term Sheet at Ghadimi Brief (Doc 8) Excerpt 10 (Plaintiffs' Bankruptcy Court Ex. 24); *see also* Ghadimi Excerpt 10 (attorney Yap testimony, TT1 at 128:7–23) and

App. 1994).

Ghadimi Excerpt 5 (creditor Ghadimi testimony, TT1 at 40:13–41:24).

On the creditors' side, the July 14, 2010 Term Sheet was signed by Ghadimi, but was *not* signed by his wife, co-creditor Turkaman. On the debtors' side, the Term Sheet was signed by Tony Ashai, but was *not* signed by Athar Ashai or Emil Youssefzadeh. *See* Ghadimi Brief (Doc 8) at 9 (citing Excerpt 10). According to Ghadimi, the attending parties and their attorneys all agreed that a subsequent Settlement Agreement would be signed "by all parties, meaning [debtor] Emil Youssefzadeh and [creditor] Haleh Turkaman, as well as [debtor] Tony Ashai and [creditor] Dr. Ghadimi." Ghadimi brief (Doc 8) at 9–10, citing Excerpt (Attorney Yap testimony, TT1 at 129:3–130:4) and Excerpt 5 (Ghadimi testimony, TT1 at 38–39:8). As the creditors point out, the trial court later found that Ashai understood, at the time he signed the Term Sheet on July 14, 2010, that all parties—including Youssefzadeh— would have to sign the ultimate agreement. *See* Doc 8 at 10 (citing TT2 at 63:9–12).

**About fifteen days after the conference, on July 29, 2010, the Ghadimis executed a Settlement Agreement and Mutual Release.** *See* JO ¶ (A)16; *see also* Plaintiffs' Trial Exhibit 9 (Agreement).

**The settlement agreement held "the Ashai parties" liable as follows:**

- "Debtor and the Ashai Parties [Tony Ashai and Emil Youssefzadeh] agree, jointly and severally, to pay Ghadimi the sum of $525,000.00 ('the settlement payment')"
- "[A]s additional security, TONY ASHAI, individually, shall execute a promissory note in the initial principal sum of $175,000.00 . . . ."
- Tony Ashai himself will pay a deposit of $50,000 within five days after signing the agreement
- The Ashai Parties to pay an additional $300,000 within forty-five (45) days of

execution of the agreement (including $175,000 paid by Tony Ashai alone in his individual capacity)

- After the Ashai Parties paid $350,000 of the $525,000, the Ghadimi creditors would dismiss with prejudice their action for judicial foreclosure on the subject property and instead conduct a non-judicial foreclosure. In so doing, the Ghadimi creditors contend, "the net effect was the Ghadimis waiving their right to obtain a deficiency judgment against all the Ashai Parties in exchange for the Ashai Parties being jointly and severally liable for the $525,000 settlement sum." Doc 8 at 10, citing Excerpt 9 at pp. 1–3 and Pre-Trial Order ¶ (A)17.

FAC at 3 ¶ 11; *see also* JO at 4 ¶ (A)17.

The parties agree that the creditors "executed the Settlement Agreement under the belief that Emil Youssefzadeh had agreed to the terms of settlement and would sign the Agreement." JO ¶ (A)18.

**When the settlement agreement (Ghadimi Excerpt 9) was delivered to creditors' attorney Yap, the agreement contained a signature over the signature line for Youssefzadeh.** *See* JO at 4 ¶ 18; *see also* Ghadimi Excerpt 6 (Attorney Yap testimony, TT1 at 130:5–131:3) and Ghadimi Excerpt 9 page 8(b).

**At trial, debtor Ashai admitted that in addition to signing the settlement agreement on his own behalf on the line reserved for his own signature, he also signed over the line reserved for Youssefzadeh's signature.** *See* JO at 4 ¶ 19 ("Tony Ashai signed the Settlement Agreement."); Ghadimi Excerpt 7—Tony Ashai Testimony, TT1 at 169:20 to 170:1 (Ashai signed over the Youssefzadeh line). Apparently Ashai signed "Emil Youssefzadeh" over the line for Youssefzadeh's signature; Ashai did not sign "Tony Ashai on behalf of Emil Youssefzadeh" or the like.

Creditor Ghadimi and his attorney Yap testified that when they received the fully executed copy of the settlement, "they believed the False Signature [sic] to be that of Mr. Youssefzadeh." Ghadimi Brief (Doc 8) at 11, citing Excerpt 5 (Ghadimi Testimony, TT1 at 43:2 to 45:12) and Excerpt 6 (attorney Yap testimony, TT1 at 131:20–22).

"At no time after delivery of the Settlement Agreement did Ashai or his attorneys tell the Ghadimis or Mr. Yap that the signature was not that of Mr. Youssefzadeh." Ghadimi Brief (Doc 8) at 11, citing Excerpt 5 (Ghadimi Testimony, TT1 at 45:13–21) and Excerpt 6 (Attorney Yap Testimony, TT1 at 131:14–19 and 131:24 to 132:17) and Excerpt 7 (Debtor Ashai Testimony, TT1 at 175:2–10).

Of the $525,000 initial principal sum which the agreement required Ashai and/or Youssefzadeh to pay to plaintiffs, Ashai himself ultimately paid $350,000 to plaintiffs (the first and second installments required by the Settlement Agreement), see JO ¶ (A)20. Youssefzadeh has paid nothing. See Ashai's Opp (Doc 10) at 10 ¶¶ 5a through 5d (citing JO ¶ 17 and Ex 7 (Pls' Trial Ex 24) and Ex 8 (Defs' Trial Ex A).

It is undisputed that after Ashai paid the first and second installments ($350,000 out of $525,000), the Ghadimi creditors completed the non-judicial foreclosure of the property and dismissed the Vineyard Bank lawsuit with prejudice as they had agreed to do (waiving their right to obtain a deficiency judgment against Youssefzadeh, who had also guaranteed the loan and who had *apparently* approved and signed the settlement agreement). See JO at 4 ¶ (A)21 and FAC at 3 ¶ 12. On September 13, 2010, creditor Turkaman recorded a Notice of Trustee's Sale, providing notice that she intended to conduct a private foreclosure, and on October 8, 2010 a Trustee's Deed was recorded which conveyed title to the property to Turkaman. See JO at 4 ¶¶ (A)23–24.

In return, the Ashai Parties dismissed with prejudice their adversarial proceeding against creditors Ghadimi and Turkaman, see JO at 4 ¶ (A)22.

It is also undisputed, however, that neither Tony Ashai, Athar Ashai nor Emil Youssefzadeh paid the remaining settlement sum of $175,000. See JO ¶ (A)25, *cited by* Ghadimi Brief (Doc 8) at 12 (left unpaid and still owed to the plaintiffs is "an initial principal amount" of $175,000); *see also* FAC at 3 ¶ 13.

According to the plaintiff creditors (the Ghadimis), they would not have executed the settlement agreement if they had known that Ashai's representations regarding Youssefzadeh were false, *see* FAC at 4 ¶ 21. In turn, plaintiffs allege, "they would not have conducted a non-judicial foreclosure against the Property, and would instead have complete a judicial foreclosure, thereby allowing them to obtain a deficiency judgment against Emil [Youssefzadeh] for the unpaid balance of Vineyard Bank's loan, plus interest and attorney's fees thereon." FAC at 4 ¶ 21. Moreover, plaintiffs contend that a deficiency judgment against Youssefzadeh would have been no empty remedy because they have been "informed and believe that Emil has considerable assets such that Plaintiffs could have collected on a deficiency judgment against Emil, and could have successfully collected the remaining $175,000 remaining due under the Settlement Agreement." FAC at 5 ¶ 23.

PROCEDURAL HISTORY AND BANKRUPTCY JUDGE'S ORAL RULING FOR DEBTOR ASHAI

On August 16, 2011, the Ghadimi creditors informed attorney Clifford that the Ashai Parties were in default under the term of the settlement agreement. On September 16, 2011, the creditor Ghadimis

filed suit against the Ashai Parties for breach of the signed, written settlement agreement. *See* Pre–Trial Order ¶¶ (A)26–27. On January 16, 2013, Ashai filed his petition for bankruptcy protection under Chapter 7 of the U.S. Bankruptcy Code. *See* FAC at 3 ¶ 15.

Within Ashai's bankruptcy proceeding, the Ghadimi creditors initiated an adversary proceeding by filing a complaint against Ashai on April 12, 2013 and then a first amended complaint ("FAC") on July 25, 2013. *See* Appellants' Excerpt of Record 1. The Bankruptcy Court had jurisdiction under 28 U.S.C. § 157 and 28 U.S.C. § 1334, and treated the matter as a core proceeding per 28 U.S.C. section 157(b)(2)(I), *see* FAC at 1. In their Prayer for Relief, the Ghadimis sought a declaration that Ashai was liable to them for $175,000 *plus* "an amount measured by the difference the foreclosure sale price of the Property and the amount of the Vineyard Bank loan, plus interest, attorney's fees and costs", *see* FAC at 5–6. **The Ghadimis also sought a declaration that Ashai's remaining debt to the Ghadimis was rendered non-dischargeable by operation of 11 U.S.C. § 523(a)(2)(A) because of Ashai's intentional, material misrepresentations.** *See* FAC at 6.

On January 17, 2014, the Bankruptcy Judge issued a Joint Pre–Trial Order stating that "the following issues of law, and no others, remain to be litigated:

1. Whether, as a proximate result of Tony Ashai's alleged misrepresentations, Plaintiffs have been damaged as follows:

    (a) loss of the $175,000 to which they were otherwise entitled to recover from Emil Youssefzadeh per the Settlement Agreement [sic] the Vineyard Bank loan, plus interest, attorney's fees and costs thereon, all at a sum according to proof;

    (b) damages as measured [by the difference] between the foreclosure sales [sic] price of the Subject Property and the amount of the Vineyard Bank loan, plus interest, attorney's fees and costs thereon.

2. Whether judgment should be entered against Tony Ashai for the damages described above and whether such judgment is non-dischargeable under 11 U.S.C. [section] 523(a)(2)(A).

3. Whether, by dismissing the Vineyard Bank Lawsuit[,] Plaintiffs waived their right to seek judicial foreclosure and a deficiency judgment against Emil Youssefzadeh.

4. Whether, [by] dismissing the adversarial Complaint against Plaintiffs in a prior action did Plaintiffs waive their right to seek more than the $175,000 claim in this adversary proceeding.

5. Whether Tony Ashai made repeated representations that he was signing on behalf of Emil Youssefzadeh, and whether Mr. Ashai had indirect authority to represent Emil's interest under the indemnity agreement; and whether these are true issues of law as opposed to issues of fact; and whether such arguments are barred for Ashai's failure to raise them as affirmative defenses.

JO at 9 ¶¶ (C)1–5. The creditor-plaintiffs filed an application to amend the pre-trial order on May 5, 2014, and defendant-debtor Ashai filed an opposition brief on May 9, 2014 (BK Docs 45–46 and 51). After hearing oral argument on May 12, 2014 (BK Doc 52), the Bankruptcy Judge issued an Order denying the motion to amend on May 14, 2014 (BK Doc 54).

The Bankruptcy Judge conducted a trial on May 29 and 30, 2014. **At trial, debtor Youssefzadeh testified that he never authorized Ashai to negotiate a settlement**

on his behalf and never authorized Ashai to sign his (Youssefzadeh's) name on the settlement agreement. *See* Ghadimi Excerpt 8 (Youssefzadeh Trial Testimony, TT2 at 16:17–23 and 18:24–19:5). Debtor Youssefzadeh also testified that if he had been held responsible for paying the remaining $175,000 debt to the Ghadimis, he (Youssefzadeh) was financially capable of paying it. *See* Ghadimi Excerpt 8 (Youssefzadeh Testimony, TT2 at 31:18–21).

On May 30, 2014, the bankruptcy judge orally announced his findings of fact and conclusions of law. *See* TT2 at 59:5–69:5 (Robles, Bankr. J.) and BK Doc 56. The bankruptcy judge issued separate final judgment for defendant-debtor Ashai on June 9, 2014 (BK Doc 58).

As the Ghadimi creditors characterize it, the bankruptcy judge

> held the Term Sheet [from the July 14, 2010 settlement conference] to be pivotal in interpreting whether the Ghadimis relied upon the [purported Youssefzadeh] signature in the Settlement Agreement. The Term Sheet was not signed by Youssefzadeh. The Court found that the Ghadimis did not look to Youssefzadeh for payment, so Youssefzadeh's signature was not "critical" to the settlement agreement. The trial court also found that Ashai did not intend to defraud the Ghadimis because Youssefzadeh made statements to Ashai which the Court believed were sufficient to absolve Ashai of fraudulent intent.

Ghadimi Brief (Doc 8) at 12–13. On June 9, 2014, the bankruptcy judge entered judgment in favor of debtor Ashai and against plaintiffs Ghadimi and Turkaman on "all of Plaintiffs' claims for relief in Plaintiffs' Amended Complaint", including the Ghadimis' nondischargeability claim. *See* Appellants' Excerpt of Record 3 (Judgment in Case No. 2:13–bk–11265–ER, Adversary Proceeding No. 2:13–ap–01448–ER).

The Ghadimis timely filed a notice of appeal that day, then timely filed an Election to Transfer the Appeal to District Court on June 30, 2014. *See* BK Docs 63–65. They explain the basis for their appeal as follows:

> The primary thrust of this appeal is that there is no evidence to support Judge Robles's finding that the Ghadimis did not rely upon Ashai's "False Signature." The trial court erroneously took Ashai's misrepresentation to occur during the July 14, 2010, settlement conference, and thus attached import to the Term Sheet.
>
> The actual misrepresentation upon which the Appellants relied came approximately two weeks later, after the Settlement Agreement was drafted and a fully executed copy delivered to the Ghadimis and their counsel. *At that time* Ashai failed to disclose that he, Ashai, had signed over Youssefzadeh's signature line.
>
> The trial court's decision to seize upon the events and documents created at the July 14, 2010 settlement conference were [sic] erroneous because the parties understood that a subsequent agreement would be drafted which would supersede the previous Term Sheet. In fact, the Settlement Agreement contains terms substantially different from those in the Term Sheet (such as the agreement by all Ashai Parties to be responsible for the entire settlement sum), and even recites that it superseded all previous agreements.
>
> Just as importantly [appellant Ghadimi's counsel] Mr. Yap testified that implementation of the Settlement Agreement by the Ghadimis, i.e., conducting a nonjudicial foreclosure, was delayed until Youssefzadeh's signature [or what the appellants thought was Youssefzadeh's signature] was obtained.

Judge Robles further held that Ashai did not intend to defraud the Ghadimis. He failed, however, to consider whether Ashai's failure to disclose the False Signature constituted a "reckless disregard of the truth", which also constitutes fraud under bankruptcy law. [footnote 5: Judge Robles acknowledged this at TT2 page 60:25–61:3, citing *In re Anastas*, 94 F.3d 1280 (Ninth Cir. 1996).] This reckless disregard [by Ashai] is evident because Ashai knew that the Ghadimis expected all the Ashai Parties, including Youssefzadeh, to sign the Settlement Agreement, but failed to tell them of the False Signature.

Ghadimi Br. (Doc 8) at 13–14 (some ¶ breaks added). The Court has also reviewed the Bankruptcy Judge's judgment in favor of Ashai and the transcript of his oral findings and conclusions (Ashai's Opp Exs 2 and 3).

## THIS COURT HAS BANKRUPTCY APPELLATE JURISDICTION

The parties do not contest this court's bankruptcy appellate jurisdiction, *see* Appellee Ashai's Opp (Doc 10) at 5 ("Appellee concurs with the statement of the basis of appellate jurisdiction identified in appellant's brief on appeal. That is, the Bankruptcy Court granted judgment in favor of appellees [sic, there is only one appellee] on the non-dischargeability of appellee's claim in this core proceeding, [and] this constitutes a final order appealable as of right under 28 U.S.C. § 158(a)(1) and Bankruptcy Rule 8001(a)."), and the Court determines that it has jurisdiction over this appeal. A party may appeal a bankruptcy court's order to the District Court if the order is final and binding. *See* 28 U.S.C. section 158(a).

█ "An appellant may choose between a Bankruptcy Appellate Panel, if one exists in the Circuit, [or] a District Court to hear its appeal." *IMO Jacobs et al., Debtors (Parker v. Jacobs)*, No. CV 16–00602–PHX, 2016 WL 1573310, *2 (C.D. Cal. Apr. 19, 2016) (John Tuchi, J.) (citing 28 U.S.C. section 158 subsec. c); *see, e.g., In re BGM Pasadena, LLC*, No. 2:15–bk–27833–BB, 2016 WL 1738109, *4 n.3 (C.D. Cal. Bankr. Apr. 26, 2016) (Bluebond, Bankr. J.) ("As the Debtor has not yet filed a notice of appeal, [it] has therefore not yet made an election as between the Bankruptcy Appellate Panel and the district court."). Here, appellant Ghadimi timely elected to have this Court hear this appeal, rather than the BAP, pursuant to Federal Rule of Bankruptcy Procedure 8001(e).

## STANDARD OF REVIEW ON APPEAL FROM BANKRUPTCY COURT

**This Court will review the Bankruptcy Court's conclusions of law de novo.** *See In re City of San Bernardino, Debtor (Newberry et al. v. City of San Bernardino)*, 558 B.R. 321, 326 (C.D. Cal. 2016) (Wright, J.) (citing *In re Mortgages, Ltd.*, 771 F.3d 1211, 1214 (9th Cir. 2014)).

█ **"In the Ninth Circuit, the standard for review"** of a bankruptcy judge's ruling on **"an objection to discharge is:** '(1) the court's determinations of the historical facts are reviewed for clear error; (2) the selection of the applicable legal rules... is reviewed de novo; and (3) the application of the facts to those rules requiring the exercise of judgments about the values animating the rules is reviewed de novo.'" *Weddell v. Acting U.S. Trustee*, 551 B.R. 74, 80 (D. Nev. 2016) (quoting *In re Searles (Searles v. Riley)*, 317 B.R. 368, 373 (BAP 9th Cir. 2004), *aff'd*, 212 Fed. Appx. 589 (9th Cir. 2006); *see also In re Murtaza (Murtaza v. Sigmund)*, BAP No. CC–15–1075, 2016 WL 1383890, *3 (9th Cir. BAP Apr. 5, 2016) (quoting *In re Retz (Retz v. Samson)*, 606 F.3d 1189, 1196 (9th Cir. 2010)); *Wegner v. Murphy (In re Wegner, Debtor)*, 839 F.2d 533, 536 (9th Cir. 1988) (bankruptcy judge's factual find-

ings are reviewed for clear error) (citation omitted).

■ For this purpose, " '[a] finding is clearly erroneous when it is illogical, implausible, or without support in the record.' " *In re Taggart (Emmert v. Taggart),* 548 B.R. 275, 286 (9th Cir. BAP 2016) (quoting *United States v. Hinkson,* 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)); *see also Anderson v. City of Bessemer City, NC,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (a factual finding is clearly erroneous if the appellate court, after reviewing the record, has "a firm and definite conviction" that a mistake has been committed); *Mission Indians v. American Mgmt.,* 824 F.2d 710, 724 (9th Cir. 1987). Further, on review of a bankruptcy judgment, "the clearly erroneous standard of review is an element of the clarified abuse[-]of[-]discretion standard[.]" *Hinkson,* 585 F.3d at 1261–62 and n.21 (en banc) (quoting *Anderson,* 470 U.S. at 577, 105 S.Ct. 1504).

■ "Because discharge is generally a matter left to the sound discretion of the bankruptcy judge, [courts] disturb this determination only if [they] find a gross abuse of discretion." *In re Cox (Lansdowne v. Cox),* 41 F.3d 1294, 1296 (9th Cir. 1994) (quoting *In re Cox (Cox v. Lansdowne),* 904 F.2d 1399, 1401 (9th Cir. 1990)).

■ "Accordingly, 'we must defer to the Bankruptcy Court's conclusion [as to whether] the discharge should be denied unless its factual findings are clearly erroneous or it applies the incorrect legal standard.' " *In re Cox,* 41 F.3d at 1296 (quoting *In re Cox,* 904 F.2d at 1401); *see also Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990) (stating that a bankruptcy court necessarily abuses its discretion if it bases its decision on an erroneous view of the law or on clearly-erroneous factual findings).

## LEGAL STANDARD: NON–DISCHARGEABILITY OF CERTAIN DEBTS

■ " 'The principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor.' " *In re Rivera, Debtor (Rivera v. Orange County Probation Dep't),* 832 F.3d 1103, 1110 (9th Cir. 2016) (quoting *Marrama v. Citizens Bank of Massachusetts,* 549 U.S. 365, 367, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007)). " 'Congress normally confines [exceptions to discharge] to circumstances where strong, special policy considerations, such as the presence of fault, argue for preserving the debt.' " *In re Rivera,* 832 F.3d at 1109 (quoting *Bullock v. BankChampaign, N.A.,* —— U.S. ——, 133 S.Ct. 1754, 1760, 185 L.Ed.2d 922 (2013)). The exceptions to discharge spelled out in the Bankruptcy Code "are to be construed narrowly so as to make a fresh start possible unless [Congress] has clearly created an exception" that applies. *See In re Rivera,* 832 F.3d at 1109 (citing *Bullock,* —— U.S. ——, 133 S.Ct. at 1760).

"The Bankruptcy Code prohibits debtors from discharging debts 'obtained by ... false pretenses, a false representation, or actual fraud.' " *Husky Int'l Electronics, Inc. v. Ritz,* —— U.S. ——, 136 S.Ct. 1581, 1585, 194 L.Ed.2d 655 (2016) (Sotomayor, J., for the majority) (citing 11 U.S.C. § 523(a)(2)(A)).

■ "Because a fundamental policy of the Bankruptcy Code is to afford [honest] debtors a fresh start, 'objections to discharge should be strictly construed against an objecting creditor and in favor of the debtor.' " *In re Scheer (Scheer v. State Bar of Calif.),* 819 F.3d 1206, 1209 (9th Cir. 2016) (Berzon, Owens, D.J. Marbley) (quoting *In re Riso (Snoke v. Riso),* 978 F.2d 1151, 1154 (9th Cir. 1992)). *See, e.g., In re Bernard (Bernard v. Sheaffer),* 96 F.3d 1279, 1281 (9th Cir.

1996) ("In keeping with the 'fresh start' purposes behind the Bankruptcy Code, courts should construe section 727 liberally in favor of debtors and strictly against parties objecting to discharge."). "This does not", however, actually "alter the burden on the objector, . . . ." *In re Retz*, 606 F.3d at 1196 (citing *In re Khalil (Khalil v. Developers Surety & Indemnity Co.)*, 379 B.R. 163, 166 (9th Cir. BAP 2007), *aff'd*, 578 F.3d 1167 (9th Cir. 2009)).

■■■ **The appellant creditors have the burden of proof on their section 523(a)(2)(A) claim that Ashai's remaining debt from the Vineyard Bank loan is not dischargeable in bankruptcy** because Ashai obtained the money by false pretenses, by a false representation, and/or by actual fraud. "To prevail on a section 523(a)(2)(A) claim" that a debt is not dischargeable in bankruptcy, appellants as "creditor[s] must prove five elements by a preponderance of the evidence:

(1) **misrepresentation, fraudulent omission[,] or deceptive conduct by the debtor;**

(2) [the debtor's contemporaneous] knowledge of the falsity or deceptiveness of the statement or conduct;

(3) an intent [by the debtor] to deceive;

(4) justifiable reliance by the creditor on the debtor's statement or conduct; and

(5) damage to the creditor proximately caused by its reliance on the debtor's statement [or material omission] and/or conduct.

*In re Carroll (Jadallah v. Carroll)*, 549 B.R. 375, 382 (N.D. Cal. Bankr. 2016) (Blumenstiel, Bankr. J.) (citing *In re Harmon (Harmon v. Kobrin)*, 250 F.3d 1240, 1246 (9th Cir. 2001)); *see also In re Hashemi (AmEx Travel–Related Services Co. v. Hashemi)*, 104 F.3d 1122, 1125 (9th Cir. 1997); *accord generally Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (creditor must prove a statutory nondischargeability claim by a preponderance of the evidence).

■■■ **As to the first requisite for a section 523(a)(2)(A) nondischargeability claim, misrepresentation or deception by the debtor,** "[a]n omission or failure to disclose can constitute a misrepresentation if the omission or failure to disclose creates a false impression [in the mind of the creditor] that is known by the debtor." *In re Harris (Citibank (South Dakota), N.A. v. Harris*, 203 B.R. 117, 121 (Bankr. N.D. Ill. 1996) (citing *Peterson v. Bozzano (In re Bozzano)*, 173 B.R. 990, 993 (Bankr. M.D.N.C. 1994)).

■■■ **As to the second requisite for a 523(a)(2)(A) nondischargeability claim, the debtor's knowledge of the falsity or deceptiveness of his statement (or nondisclosure) to the would-be creditor,** a misrepresentation is fraudulent "if the maker (a) knows or believes that the matter is not as he represents it to be, (b) does not have the confidence in the accuracy of his representation that he states or implies, or ( c ) knows that he does not have the basis for his representation that he states or implies." *In re Gertsch (Gertsch v. J & J Finance Corp.)*, 237 B.R. 160, 168 (BAP 9th Cir. 1999) (citing Restatement (2d) of Torts Section 526 (1977)).

**As to the third requisite for a section 523(a)(2)(A) nondischargeability claim, debtor's intent to deceive,** "In *In re Dougherty*," the Ninth Circuit's Bankruptcy Appellate Panel "adopted a nonexclusive list of twelve objective factors that 'trial courts should consider' to determine the debtor's intent." *See In re Zaldana (First Nat'l Bank of Omaha v. Zaldana)*, No. 12–14791–B–7, AP No. 12–01144, 2013 WL 2369754, *6 (E.D. Cal. Bankr. Mar. 21, 2013) (Lee, Bankr. J.) (citing *In re Dougherty, Debtor (Citibank (South Dakota), N.A. v. Dougherty)*, 84

B.R. 653 (9th Cir. BAP 1988) (Jones, Meyers, Ashland), *abrogated on other grounds by Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). "However, 'these factors are nonexclusive; none is dispositive, nor must a debtor's conduct satisfy a minimum number [of factors] in order [for the creditor] to prove fraudulent intent.'" *In re Zaldana*, 2013 WL 2369754 at *6 (quoting *In Re Hashemi*, 104 F.3d at 1125, and citing *In re Ettell, Debtor (Household Credit Servs., Inc. v. Ettell)*, 188 F.3d 1141, 1145 (9th Cir. 1999)).

▇ "That said, a false statement or omission that has no impact on a bankruptcy case is not material and does not provide grounds for denial of a discharge . . . ." *Khalil*, 379 B.R. at 172 (citing *In re Wills (Fogal Legware of Switzerland, Inc. v. Wills)*, 243 B.R. 58, 63 (9th Cir. BAP 1999) (citing *In re Aubrey (Aubrey v. Thomas)*, 111 B.R. 268, 274 (9th Cir. BAP 1990))). For this purpose, "[a] fact is material 'if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property.'" *Khalil*, 379 B.R. at 172 (citing *Wills*, 243 B.R. at 62)).

▇ Finally, "[a]t common law (and under § 523(a)(2)(A), which incorporates the common[-]law standard), the perpetrator of an alleged fraud cannot avoid liability by showing that the victim could have uncovered the fraud had the victim investigated more carefully." *In re Stijakovich–Santilli, Debtor (Whatley v. Stijakovich–Santilli)*, 542 B.R. 245, 257 (9th Cir. BAP 2015) (citing, *inter alia*, *In re Oh, Debtor (Merchants Bank of Calif. v. Oh)*, 278 B.R. 844, 855 (Bankr. C.D. Cal. 2002) ("A person is justified in relying on a misrepresentation even if he might have ascertained the falsity of the information through investigation. Although one cannot close his eyes and rely blindly, mere negli-gence in failing to discover an intentional misrepresentation is no defense to fraud.") (citing *In re Eashai, Debtor (Citibank (South Dakota), N.A. v. Eashai)*, 87 F.3d 1082, 1090–91 (9th Cir. 1996))). *See also In re Lansford, Debtor (La Trattoria, Inc. v. Lansford)*, 822 F.2d 902, 904 (9th Cir. 1987) ("Having intentionally misled the sellers in an area he knew was important to them, it is unseemly for Lansford to now to argue that he should be excused from section 523 because the sellers believed him.").

▇ Thus, for a § 523(a)(2)(A) nondischargeability claim predicated on debtor fraud or misrepresentation, "[t]he victim need not show that he could not have discovered the fraud; rather, he may only show that he justifiably relied on the perpetrator's false representations." *Stijakovich–Santilli*, 542 B.R. at 257; *cf. In re Mulder (First Fed. Bank v. Mulder)*, 306 B.R. 265, 273 (Bankr. N.D. Iowa 2004) ("The failure of Bank to check the title records to verify ownership of the boat and trailer [claimed by debtors as collateral for loan], even though this might have been done at little cost and effort, is not fatal to Bank's claim that it justifiably relied on [the] Mulders' representation that they owned the property. Bank was entitled to rely on Mulders' statement in the Agreement and the affected loan document, unless there were warning signs that the statements were not true.").

▇ As to the fourth requisite for a section 523(a)(2)(A) nondischargeability claim, justifiable reliance by the creditor on the debtor's statement or omission, "[t]his standard is significantly less stringent than the 'reasonable reliance' criterion imposed by section 523(a)(2)*(B)* (false financial statements)." *In re Bauer (Miller v. Bauer)*, 290 B.R. 568, 579 (Bankr. S.D. Ohio 2003). "It is a subjective standard, '. . . that takes into account the

interactions between and experiences of the two parties involved . . . . [It] is a 'fact sensitive standard' that depends on 'the circumstances of . . . the case, rather than o[n] the application of a community standard of conduct to all cases.' " *In re Bauer,* 290 B.R. at 579 (quoting Jeffrey R. Priebe, *Field v. Mans* and *In re Keim*: Excepting Debts from Bankruptcy Discharge and the Difference Between 'Experienced Horsemen' and 'Reasonable Men' ", 54 Ark. L. Rev. 99, 109–110 (2001) (discussing *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 444, 133 L.Ed.2d 351 (1995) (citing Restatement 2d of Torts § 545A, Comment b (1976))), *aff'd,* 128 Fed.Appx. 467 (6th Cir. 2005).

ANALYSIS: Section 523(a)(2)(A) Does Not Apply to Misrepresentations Occurring After the Creditor Extended the Loan, So As a Matter of Law It Does Not Render Ashai's Debt to the Ghadimis Non–Dischargeable

**The Bankruptcy Code provision governing exceptions to the discharge of an individual debtor's scheduled debt provides in pertinent part as follows:**

(a) *A discharge under section 727 [Discharge], 1141 [Effect of Confirmation], 1228(a) [Discharge], 1228(b), or 1328(b) [Discharge] of this title does not discharge an individual debtor from any debt—*

\* \* \*

(2) *for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—*

(A) *false pretenses, a false representation,* or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

( I) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

\* \* \*

11 U.S.C. section 523(a)(2)(A) and (B).

▪ The creditors here sought to declare a debt non-dischargeable by operation of section 523(a)(2)(A). Our Circuit has issued a published decision, *In re Boyajian (New Falls Corp. v. Boyajian),* 367 B.R. 138 (9th Cir. BAP 2007), *aff'd,* 564 F.3d 1088 (9th Cir. 2009), which sets forth the proper interpretation of the words "to the extent obtained by" in section 523(a)(2). **Boyajian is precedentially binding and compels affirmance of the bankruptcy court's ruling that Ashai's debt was not rendered nondischargeable by section 523(a)(2)(A).**

In **Boyajian,** a party named Epic executed a lease with Blue Diamond and simultaneously made a loan to Blue Diamond in July 1999, a loan which Blue Diamond's President (Pateel Boyajian) and Vice–President (Salpy Boyajian) personally guaranteed. In conjunction with signing the Epic–Blue Diamond lease and their personal guarantees, the Boyajians each provided Epic with a personal financial statement dated June 30, 1999. *See Boyajian,* 367 B.R. at 139–40. After Epic sold its rights in the loan to Cupertino National Bank ("Cupertino Bank"), Blue Diamond defaulted on its obligations under the Epic lease and the Boyajians defaulted on their personal guarantees. *See Boyajian,* 367 B.R. at 140. Assignee-creditor Cupertino Bank sued in Contra Costa County Superior Court and obtained a default judgment against Blue Diamond and the Boyajians jointly and severally for the amount due under the Epic Lease and the Boyajians' guarantees. *See Boyajian,* 367 B.R. at 140.

In 2003, assignee-creditor Cupertino Bank sold its right and interest in the judgment to Stornawaye Capital, LLC, which in turn sold that right and interest in the judgment to New Falls Corporation ("New Falls") in February 2004. *See Boya-*

*jian*, 367 B.R. at 140. The Boyajians promptly filed voluntary petitions for Chapter 7 bankruptcy protection in March 2004, *see id.* Assignee-creditor New Falls brought an adversary proceeding against each of the Boyajians in their respective bankruptcy cases, seeking a declaration that under section 523(a)(2)(B) the judgment against the Boyajians was not dischargeable because the personal financial statements that the Boyajians had submitted in order to obtain the lease/loan from original creditor Blue Diamond were fraudulent. *See Boyajian*, 367 B.R. at 140. The bankruptcy court entered summary judgment in favor of the debtor Boyajians, reasoning that because assignee creditor New Falls had not itself relied on the debtors' allegedly fraudulent financial statements, *see id.*

On appeal in *Boyajian*, the Bankruptcy Appellate Panel ("BAP") for the Ninth Circuit reversed. The BAP framed the question on appeal as follows:

> Whether the "reasonable reliance" required by section 523(a)(2)(B)(iii) for a nondischargeable debt incurred with the use of a false financial statement in writing requires reasonable reliance not only by the lender who extended the original credit to a debtor, but also [requires reasonable reliance] by an assignee [of the original creditor].

*Boyajian*, 367 B.R. at 140–41. The BAP explained that this issue was the only disputed issue:

> At oral argument, the [Boyajians] conceded that three of the four essential elements prescribed by section 523(a)(2)(B) make sense only in connection with the extension of credit by the original creditor. Specifically, they concede that subparagraph (I) requiring that the statement be materially false, subparagraph (ii) requiring that the statement address financial condition, and subparagraph (iv) requiring intent

to deceive all relate to the original creditor at the time of the original transaction and not to that creditor's assignee at some later time.

> Thus, the question boils down to whether subparagraph (iii) requiring reasonable reliance on the statement "by the creditor to whom the debtor is liable" must, as the bankruptcy court held, be reevaluated each time the claim is assigned.

*Boyajian*, 367 B.R. at 141. **The BAP held that a creditor seeking a declaration of nondischargeability need only show that *the original creditor* reasonably relied on the debtor's false financial statement in making the decision to lend the money. The BAP in *Boyajian* explained in part as follows:**

> Imposing a requirement that [assignee creditor] New Falls prove its own reliance [on the debtors' fraudulent financial statements], independent of [original lender] Epic's, not only imposes a barrier to enforcement of its assignment rights, it makes no sense when applying the remedy made available under section 523(a)(2)(B).

*Boyajian*, 367 B.R. at 146–47. The BAP concluded that section 523(a)(2)(B) nondischargeability turns only on whether the original lender relied on the false financial statement *at the time it extended the loan in the first place.* Conversely, the BAP held that 523(a)(2)(B) dischargeability does <u>not</u> turn on whether the debtor committed misrepresentation or other fraud deceiving the original lendor (or the original lendor's assignee) at some later time after the loan was issued.

In reaching these conclusions, the BAP adopted the reasoning of out-of-circuit decisions applying the neighboring provision, 523(a)(2)*(A)*, the provision which is at issue in our case. The BAP wrote as follows:

for purposes of [section] 523(a)(2), however, the timing of the fraud and the elements to prove fraud focus on the time when the lender ... made the extension of credit to the Debtor.

In other words, the assignee of the Agreement ... steps into the shoes of its assignor ..., and the inquiry of whether a creditor reasonably relied on Debtor's alleged misrepresentations is focused on the moment in time when that creditor extended funds to Debtor. *See McClellan v. Cantrell*, 217 F.3d 890, 896 (7th Cir. 2000) (Ripple, Circuit Judge, concurring) (noting [that] Congress's use of "obtained by" in section 523(a)(2) "clearly indicates that fraudulent conduct occurred *at the inception of the debt*, i.e., the debtor committed a fraudulent act to induce the creditor to part with his money or property").

*Boyajian*, 367 B.R. at 147 (paragraph break added, italics added) (citing *Bombardier Capital, Inc. v. Dobek (In re Dobek)*, 278 B.R. 496, 508 (Bankr. N.D. Ill. 2002)). The BAP explained that decisions interpreting particular language in section 523(a)(2)(**B**) (like *Boyajian*) are appropriately consulted by courts interpreting the identical language as it appears in section 523(a)(2)(A) (like the instant case *Ashai*), and vice versa. The BAP wrote:

> While *Dobek* and *McClellan* are both cases decided under section 523(a)(2)(A), because the "obtained by" language also is part of the text of section 523(a)(2)(B), the same analysis is applicable in non-dischargeability cases under section 523(a)(2)(B). Considered as a whole, section 523(a)(2)(B) links in time:
>
> 1) money or credit,
>
> 2) obtained by the debtor,
>
> 3) by use of a materially false financial statement,
>
> 4) that was reasonably relied upon by the creditor when the original transaction was consummated.

For purposes of section 523(a)(2)(B)(iii), the term "creditor to whom the debtor is liable" necessarily is a temporal concept, relating to the creditor who extended credit to the debtor when the loan was made. It would be absurd to interpret it otherwise.

*Boyajian*, 367 B.R. at 147 (boldface added). *Accord In re Bath, Debtor (Monarch Capital Corp. v. Bath)*, 442 B.R. 377, 397 n.8 (Bankr. E.D. Pa. 2010) (" '[T]he inquiry of whether a creditor justifiably relied on [a] Debtor's misrepresentations is focused on the moment in time when that creditor extended the funds to [the] Debtor.' ") (quoting *In re Dobek, Debtor (Bombardier Capital, Inc. v. Dobek)*, 278 B.R. 496, 508 (Bankr. N.D. Ill. 2002) (Jack Schmetterer, Bankr. J.) and citing *Boyajian* ).

**The U.S. Court of Appeals for the Ninth Circuit affirmed, stating in pertinent part as follows:**

> This case turns on section 523(a)(2)(B)(iii) of the Bankruptcy Code and its intersection with the law of assignment. Section 523(a)(2)(B)(iii) provides an exception to discharge of a debt under 11 U.S.C. § 727 where the debt was obtained by means of a materially false written financial statement. Section 523(a)(2)(B)(iii) requires that the materially false statement be one "on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied." The question before us is whether the assignee of [the right to receive payment of] a debt must itself have relied on the materially false statement, or whether it is enough that the original creditor did so.
>
> We begin by analyzing the statutory language. The Boyajians argue that under the plain meaning of section 523(a)(2)(B)(iii) the creditor asserting non-dischargeability must itself have re-

lied on the allegedly materially false financial statement.

The Boyajians focus on the word "is" in section 523(a)(2)(B)(iii). They argue that the use of the present tense requires that, in the case of an assignment, there by reliance by the creditor who holds the claim at the time of the bankruptcy, even if there was reliance by the creditor who originally extended credit.

We disagree. First, a narrow focus simply on the verb tense in subsection (iii) does not capture the proper meaning of section 523(a)(2)(B). The relevant statutory language, quoted more fully, is as follows:

> A discharge under section 727 . . . does not discharge an individual debtor from any debt . . . for money . . . to the extent obtained by . . . use of a statement that is materially false . . . on which the creditor to whom the debtor is liable for such money . . . reasonably relied; and . . . that the debtor caused to be made . . . with intent to deceive[.]

11 U.S.C. § 523(a)(2)(B).

**The clear import of this language is that a debt is non-dischargeable to the extent that it is "obtained by . . . use of a statement in writing" made with the intent to deceive the creditor.**

Read as a whole, this language does not provide that a debt is non-dischargeable only if the assignee creditor reasonably relied on the materially false statement. *See, e.g., McClellan v. Cantrell*, 217 F.3d 890, 896 (7th Cir. 2000) (Ripple, J., con-

curring) ("The language 'obtained by' clearly indicates that the fraudulent conduct occurred at the inception of the debt, i.e., the debtor committed a fraudulent act to induce the creditor to part with his money or property.").

**The most natural reading of the word "is" in subsection (iii) is simply that the debt is nondischargeable if, *at the time the money is obtained by the debtor*, he or she used a materially false written statement that was intended to deceive.**

*Boyajian*, 564 F.3d at 1090–91 (boldface and italics added for emphasis) (some paragraph breaks added).

■ **"In essence, for a court to make a determination of nondischargeability under section 523(a)(2)(A), a creditor must prove fraud *in the inducement*, . . . ."** *In re Keisler and Dickens, Debtors (Mission Compound LLC et al. v. Keisler)*, 2015 WL 1775155, *7 (Bankr. E.D. Tenn. Apr. 15, 2015) (Parsons, Chief Bankr. J.) (citing *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 766 (Bankr. E.D. Tenn. 2003) (Stair, Bankr. J.) and *Commercial Bank & Trust Co. v. McCoy (In re McCoy)*, 269 B.R. 193, 198 (Bankr. E.D. Tenn. 2001) (Boswell, Bankr. J.)).[5] In this vein, the Ninth Circuit Court of Appeals holds that "[a] claim for nondischargeability of debt under 523(a)(2)(A), alleging fraudulent concealment, fraud and misrepresentation to obtain funds may be analyzed as a claim for fraud in the inducement under California law." *In re Castro*,

---

5. *Accord, e.g., In re Steele, Debtor (Direct Capital Corp. v. Steele)*, 549 B.R. 713, 718 (S.D. Ind. Bankr. 2016) ("The Court is not convinced that [debtors] engaged in fraud in the inducement here. * * * The Court finds that any debt arising from the Steeles' Personal Guaranty in the Financing Agreement is not excepted from discharge under section 523(a)(2)."); *In re Boyard, Debtor (Munoz v. Boyard)*, 538 B.R. 645, 654 (Bankr. E.D.N.Y.

2015) ("In dischargeability proceedings [under section 523(a)(2)(A)], a prior ruling's finding of fraudulent inducement will have collateral estoppel effect if the elements of fraudulent inducement under the relevant state law standard are identical to the elements of section 523(a)[ (2)(A) ].") (citing *In re Sikorski, Debtor (Okemo Mountain, Inc. v. Sikorski)*, 239 B.R. 661 (Bankr. D. Conn. 1999)).

Debtors (Dolinger v. Castro), 2011 WL 3300345 (9th Cir. BAP Apr. 4, 2011) (Pappas, Dunn, Kirscher) (citing Franklin v. Commonwealth Fin. Corp. (In re Franklin, Debtor), 922 F.2d 536, 539 (9th Cir. 1991) and In re Pham, Debtor (Nguyen v. Pham), Bankr. No. 08–30904, AP No. 08–3073, 2009 WL 3367046, *3 (Bankr. N.D. Cal. Oct. 15, 2009) (Carlson, Bankr. J.)).

As the Ninth Circuit has stated, the "to the extent obtained by" language of 11 U.S.C. section 523(a)(2)(A)—the non-dischargeability provision at issue in our case—"also is part of the text of section 523(a)(2)(B)," the non-dischargeability provision at issue in Boyajian. **Accordingly, the Circuit holds, "the same analysis is applicable in nondischargeability cases" under either 523(a)(2)(A) or 523(a)(2)(B).**

**Consequently, the Ninth Circuit's interpretation of the "to the extent obtained by" language in section 523(a)(2)(B) must also be applied to interpret the identical language applicable to nondischargeability claims under the neighboring provision, section 523(a)(2)(A). This means that in order for any misrepresentation by Ashai to render his debt nondischargeable, the Ghadimis must show that Ashai made the misrepresentation *to the original lender (VineyardBank) before the original lender extended the loan,* and that Vineyard Bank justifiably relied on that misrepresentation in deciding to lend the money in the first place.** *See In re Lewis, (Hopper v. Lewis)*, 551 B.R. 41, 48 (E.D. Cal. Bankr. 2016) (Jaime, Bankr. J.) ("The operative phrase here is 'to the extent obtained by.' *To be actionable under section 523(a)(2)(A), the prescribed conduct must have occurred **before** the debtor obtains the money.* In other words, the prescribed conduct must induce the creditor to act", i.e., must induce the creditor to lend the money in the first place); *In re*

Chopra, Debtor (Husain v. Chopra), Case No. 10–52819–CN, AP No. 10–05196, 2013 WL 1681773, *2 (N.D. Cal. Apr. 17, 2013) (Novack, Bankr. J.) (not in B.R.) ("The problematic issue is whether Chopra intended to deceive Husain when the Buyout Agreement was signed. To establish a non-dischargeable debt under section 523(a)(2)(A), *the 'target misrepresentation must have existed at the inception of the debt, and a creditor must prove that he or she relied upon that misrepresentation.'* ") (quoting In re Reingold, Debtor (Reingold v. Shaffer), BAP Nos. CC–12–1112 and Nos. CC–12–1141, 2013 WL 1136546, *5 (9th Cir. BAP Mar. 19, 2013) (Pappas, Dunn, Kirscher) (not in B.R.) and citing Boyajian, 367 B.R. at 147, aff'd, 564 F.3d 1088); *In re Indzheyan, Debtor (Fink v. Indzheyan)*, Bankr. No. 1:11–bk–15103, 2012 WL 6212698, *5 (Bankr. C.D. Cal. Dec. 13, 2012) (Mund, Bankr. J.) ("The third claim alleges fraudulent transfers . . . in order to avoid paying the earlier LA judgment. These alleged fraudulent transfers occurred well after inventory was provided on account of these checks, so section 523(a)(2)(A)—which covers debts for property *obtained* by fraud, etc.—does not apply.") (italics in original); *In re Wilson, Debtor (Burlington Indus., Inc. v. Wilson*, 114 B.R. 249, 252 n.9 (Bankr. E.D. Cal. 1990) (Russell, Bankr. J.) ("Because Debtor's misrepresentation to Mr. Hanrahan regarding the receipt (or lack thereof) of payment from PGG was made *after* the monies had been converted, no money could have been 'obtained' as a result thereof and, consequently, the exception under section 523(a)(2)(A) will not apply.") (citing 3 Collier on Bankruptcy ¶ 523.08 at page 523–49 (15th ed. 1989)) (italics in original).

**The creditors here do not even allege that Ashai made some misrepresentation or did anything dishonest in an attempt to deceive the original lender**

(Vineyard Bank) into extending the loan. Rather, the creditors allege only that Ashai made a fraudulent misrepresentation to Ghadimi and Turkaman (not to the lender, Vineyard) and then only after Vineyard extended the loan.

Under *Boyajian*'s reading of section 523(a)(2)'s phrase "to the extent obtained by", such a post-loan misrepresentation as a matter of law cannot serve as the type of misrepresentation that could render a debt nondischargeable under section 523(a)(2)(A). *See, e.g., In re Daniell, Debtor (FO–Farmer's Outlet, Inc. v. Daniell)*, BAP No. EC–12–1506–PaJuK, 2013 WL 5933657, *6 (9th Cir. BAP Nov. 6, 2013) (Pappas, joined by Jury & Kirscher, Bankr. JJ.) ("The bankruptcy court is correct that a representation made by Daniell in the 'winter of 2011' could not have induced FFO to ship goods in September and October of 2010. * * * [T]he critical debtor misrepresentation must occur at or before the point where 'the money [or goods] was obtained.'") (quoting *Campos v. Beck (In re Beck, Debtor)*, 2012 WL 2127751, *3 (Bankr. D. Ariz. June 11, 2012) ("The plaintiff must make an 'initial showing that the alleged fraud existed at the time of, and has been the methodology [sic] by which, the money, property or services were obtained.'") (quoting *Connecticut Attorneys Title Ins. Co. v. Budnick (In re Budnick, Debtor)*, 469 B.R. 158, 174 (Bankr. D. Conn. 2012))) (bracketed text added by *Campos*); *In re Montano, Debtor*, 501 B.R. 96, 106 n.7 (9th Cir. BAP 2013) (Pappas, joined by Dunn & Jury, Bankr. JJ.) (just like original lender WMC, WMC's assignee could have the mortgage loan declared non-dischargeable under section 523(a)(2)(B) "only if it can establish that [the debtor] Montano, with the intent to deceive, used a materially false written statement *to obtain the loan* from WMC, and that WMC reasonably relied on that statement") (emphasis added) (citing *Boyajian*, 564 F.3d at 1093); *In* 

*re Shane, Debtors (Bethke v. Shane)*, 548 B.R. 291, 298 (N.D. Cal. 2016) (Novack, Bankr. J.) ("A section 523(a)(2)(A) claim requires that 'the target misrepresentation must have existed at the inception of the debt, ....' * * * Shane borrowed these funds without disclosing his precarious financial condition ..., and what he was [going to be] doing with these funds to ensure some ability to repay them. Bethke trusted her son-in-law to protect her interests, and *she would not have loaned these funds if she had been told the truth.*") (quoting *Reingold*, 2013 WL 1136546 at *5, and citing *Boyajian*, 367 B.R. at 147) (emphasis added).

Federal bankruptcy judges around the country have adopted the same reading of 11 U.S.C. section 523(a)(2). *Accord In re Osborne (Gross v. Osborne)*, 520 B.R. 861, 870 (Bankr. D.N.M. Oct. 31, 2014) (Thuma, Bankr. J.) (denying a portion of creditors' section 523(a)(2)(B) nondischargeability claim, court stated, "Gross argues he was induced into making advances to the Osbornes by their representations that they could not get financing, while in fact the Osbornes were able to borrow money from State Farm and Schwab. * * * [T]he documentary evidence Gross presented in support of his argument, a series of emails between the parties, were sent between October 17, 2011 and May 8, 2012. By October, 2011, the loan had been fully advanced for more than a year. Thus, there could be no reliance on any misrepresentations made in the emails."); *In re McClendon (Gulati v. McClendon)*, 415 B.R. 170, 183 (Bankr. D. Md. 2009) (Schneider, Bankr. J.) ("[T]he fraud must have existed at the time of, and been the methodology by which, the money, property or services were obtained .... Later misrepresentations are irrelevant for purposes of determining dischargeability under Section 523(a)(2)(A).") (citing *Spinoso v. Heilman (In re Heil-*

man), 241 B.R. 137, 150 (Bankr. D. Md. 1999)); *In re Larson (Woods v. Larson)*, 2009 WL 1705714, *6 (C.D. Ill. June 17, 2009) (Perkins, Chief Bankr. J.) ("The Court finds that beginning with the third loan and up to the time of the final loans made after April 4, 2005, the Plaintiff actually relied on [debtor]'s false statements. * * * [I]t is not disputed that the first two loans were made by the Plaintiff prior to the false representations being made. Both loans were ... $850 each. So the initial amount evidence by the $26,000 note amount must be reduced by $1,700, leaving the balance of $24,300 nondischargeable."); *In re Trammell (Haas v. Trammell)*, 388 B.R. 182, 194 (Bankr. E.D. Va. 2008) (Huennekens, Bankr. J.) ("Assuming arguendo that the sexual abuse charges were manufactured by Defendant to enable her to avoid having to repay the loan, the establishment of this fact alone would not have been sufficient to render this debt nondischargeable under 11 U.S.C. section 523(a)(2)(A). * * * Those allegations were made on October 8, 2006, five days *after* Plaintiff had given Defendant the money. There is no other evidence that Defendant *obtained the money* by fraudulent means.") (italics added); *In re Thompson (Wieberg v. Thompson)*, 315 B.R. 94, 101 (Bankr. W.D. Mo. 2004) ("Wieberg argues that the Thompsons made false representations to him when, ..., they continued to assure him that cattle remained sufficient to satisfy his debt. This section of the Code, however, requires proof of a misrepresentation *at the time credit is given, extended, renewed, or refinanced*.") (italics added), *amended in part on other grounds*, 316 B.R. 326 (Bankr. W.D. Mo. 2004).

**On de novo review of the bankruptcy court's legal conclusions, then,** *see Wegner*, 839 F.2d at 536, **the Court concludes that the bankruptcy court applied the wrong legal standard.** As explained above, the bankruptcy court contradicted *Boyajian* by proceeding on the premise that on the right evidentiary record, post-loan fraud by Ashai could render his loan debt nondischargeable under 523(a)(2)(A). *Boyajian* held that only pre-loan fraud that played a role in the decision to make the loan, may render a loan debt nondischargeable.

Nonetheless, an application of the proper legal standard leads to the conclusion that the creditors have not carried their burden of establishing nondischargeability under section 523(a)(2)(A). This is simply because the creditors have not alleged that Ashai committed any pre-loan fraud (i.e., fraud in the inducement of the loan itself). **Thus, this Court must affirm the bankruptcy court's judgment of dischargeability in favor of Ashai on.** *Accord In re Cooper (Weng v. Cooper)*, No. 12–51833, 2014 WL 1675751, *4 (Bankr. N.D. Cal. Apr. 28, 2014) ("A section 523(a)(2)(A) claim requires that 'the target misrepresentation must have existed at the inception of the debt, ....' * * * The Wengs have met their burden of proof. [Debtor]'s emails and Executive Summary—*which he used to entice the Wengs' investments*—contained numerous, material misrepresentations. * * * Cooper ... intentionally made these misrepresentations and omissions *to obtain the Wengs' investment.* * * * [T]he Wengs reasonably relied ..., and *had they known the truth, they never would have invested ....*") (quoting *Reingold*, 2013 WL 1136546 at *5, and citing *Boyajian*, 367 B.R. at 147) (italics added).

■ **All that remains is for the Court to consider application of FRBP 8020** (authority for discretionary award of attorneys' fees and other costs of appeal to a winning appellee where the appeal was frivolous) **and FRBP 8021** (presumptive taxation of certain costs of the appeal, other than attorney fees, against the appellee).

Some Non–Fee Costs are Customarily Taxed Against Losing Bankruptcy Appellants Per FRBP 8021(a)(2)

FRBP 8021 is entitled simply "Costs" and provides in pertinent part as follows:
(a) Against Whom Assessed.
The following rules apply unless the law provides or the district court or BAP orders otherwise:
> (1) If an appeal is dismissed, costs are taxed against the appellant, unless the parties agree otherwise;
> (2) *If a judgment, order, or decree is affirmed, costs are taxed against the appellant;*
> (3) if a judgment, order, or decree is reversed, costs are taxed against the appellee;
> (4) if a judgment, order, or decree is affirmed or reversed in part, modified, or vacated, costs are taxed only as the district court or BAP orders.

Emphasis added. In other words, FRBP 8021(a) sets up a presumption that the winner of a bankruptcy appeal should be awarded the costs of the appeal (other than attorney's fees) at the expense of the loser. *See* Lawrence R. Ahern III and Nancy Fräas MacLean, Bankruptcy Procedure Manual: Fed. R. Bankr. P. Annotated, section 8021:1, Assessment of Costs on Appeal (Jan. 2016 updated ed.). The remainder of FRBP 8021 either has no application here (subsections b and c) or is discussed below (subsection d).[6]

**The record discloses no reason to deviate from FRBP 8021(a)'s presumption that the winner of a bankruptcy appeal should be awarded costs of the appeal** (other than attorney's fees) at the expense of the loser. *Cf. In re Sheidler, Debtor (Gaft v. Sheidler)*, No. 15–8011, 2016 WL 1179268, *1 n.1 (6th Cir. BAP Mar. 28, 2016) ("Of course, because the Panel affirms the bankruptcy Court's decision, costs of the appeal are taxed against the appellants.") (citing FRBP 8021(a)(2)).

**Therefore, appellee Ashai may file an itemized and verified bill of costs (for costs of the types listed in FRBP 8021( c)) with the Clerk of the U.S. Bankruptcy Court within 14 calendar days of this Court's entry of judgment denying this appeal.** *See* Bossano, Dawson & Dietz et al., 9E Am. Jur.2d Bankruptcy section 3847 (2d ed. Sept. 2016 Update) ("Costs incurred in the production of copies of briefs, the appendixes, and the record, and in the preparation and transmission of the record; the cost of the reporter's transcript, if necessary for the determination of the appeal; the premiums paid for the cost of . . . bonds to preserve rights pending appeal; and the fee for filing the notice of appeal are taxed as costs of the appeal . . . .").

▮ By contrast, "[s]ince attorney's fees are not among the items which the bankruptcy court has express authority to tax as costs of appeal under Fed. R. Bankr. P. 8014, any attorney's fees incurred in connection with the appeal may only be assessed, if at all, by the court in which the appeal is pending." Boassano, Dawson & Dietz et al., 9E Am. Jur.2d Bankruptcy section 3847 (2d ed. Sept. 2016 Update). "Thus, the question of whether an appeal is so frivolous as to warrant the

---

6. FRBP 8021(b) governs an award of costs for or against the federal government, so it does not apply here.

FRBP 8021( c) specifies which types of costs are taxable following appeal; it does not list attorney's fees.

Finally, FRBP 8021(d) provides that "[a] party who wants costs taxed must, within 14 days after entry of judgment on appeal, file with the bankruptcy clerk, with proof of service, an itemized and verified bill of costs, unless the bankruptcy court extends the time."

imposition of attorney's fees is to be determined by the appellate court, and a bankruptcy court may not sanction or award attorney's fees against a party for frivolous, bad-faith appeals of the bankruptcy court's own rulings." *Id.* Thus, it is *this* Court's right and duty, not that of the Bankruptcy Court, to consider the propriety of frivolous-appeal sanctions under FRBP 8020(a).

## FEDERAL RULE OF BANKRUPTCY PROCEDURE REGARDING FRIVOLOUS APPEALS

The published Ninth Circuit decision on which the Court relies, *In re Boyajian*, 564 F.3d 1088, was issued in 2009, so it was available "in the books" and on WestLaw and Lexis long before the creditors here filed their notice of appeal and their subsequent brief on appeal. Like the instant appeal, *Boyajian* involved the application of 11 U.S.C. section 523(a)(2)'s fraud-based exceptions to the dischargeability of debt. Moreover, *precisely* like the instant appeal, *Boyajian* involved the proper interpretation of the language "to the extent obtained by", which is found in the common language of 523(a)(2) before the "split" into subsections A and B.

■■■ Perusal of the *Boyajian* opinion arguably should have led the creditors here to forgo this appeal as being clearly and wholly without merit. Yet the Ghadimi creditors failed to cite *Boyajian* in their sole brief on appeal—let alone attempt the difficult task of trying to distinguish *Boyajian* from the instant case. This may be significant to the FRBP 8020(a) analysis, because an appellant's failure to even acknowledge applicable binding precedent may weigh in favor of a determination that the appeal was frivolous. *See In re Norrie, Debtor (Norrie v. Mallen)*, BAP No. CC–15–1330, 2016 WL 4009979, *8 (9th Cir. BAP July 21, 2016) (in determining whether an appeal was frivolous for purposes of

FRBP 8020(a), the appellate court may consider, *inter alia*, whether the appellant failed to cite applicable authority or cited inapplicable authority) (Kirscher, Kurtz, Faris, Bankr. JJ.) (citing *Maloni v. Fairway Wholesale Corp. (In re Maloni, Debtor)*, 282 B.R. 727, 734 (1st Cir. BAP 2002)).

**At this juncture, the Court makes no formal determination as to whether the Ghadimis' appeal qualifies as "frivolous" for purposes of FRBP 8020,** which is entitled Frivolous Appeal and Other Misconduct. The Court directs the parties' attention to FRBP 8020(a), which provides, "If the district court or BAP determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to appellee."

■■■ **Sanctions awardable under FRBP 8020(a) for a frivolous appeal may include attorney's fees.** See In re Ahn, Debtors (First Intercontinental Bank v. Ahn)*, BAP No. CC–15–1189, 2016 WL 374784, *2 (9th Cir. BAP Feb. 29, 2016) ("We are able to award attorney's fees on only two bases: (1) for a frivolous appeal under Rule 8020; or (2) as a sanction under Rule 9011."), *appeal filed*, No. 16–60013 (9th Cir. Feb. 29, 2016).

■■■ **For this purpose, " '[a]n appeal is frivolous if the results are obvious, or the arguments of error are wholly without merit.' "** *In re Chandler (Chandler v. Deutsche Bank National Trust Co.)*, No. 14–60036, BAP No. 14–1014, 667 Fed. Appx. 617, 618, 2016 WL 3545631, *1 (9th Cir. June 27, 2016) (memorandum) (Wardlaw, Paez, Bea) (quoting *George v. City of Morro Bay (In re George)*, 322 F.3d 586, 591 (9th Cir. 2003) (per curiam)); *see also DeWitt v. Western Pacific R.R. Co.*, 719 F.2d 1448, 1451 (9th Cir. 1983) (citing *McConnell v. Critchlow*, 661 F.2d 116, 118 (9th Cir. 1981)). *Accord Foster v. Holder*,

No. 4:15–cv–116–O, 2015 WL 4588305, *4 (N.D. Tex. July 30, 2015) (O'Connor, J.) (same) (citing *Coghlan v. Starkey*, 852 F.2d 806, 811 (5th Cir. 1988)), *appeal dismissed*, 644 Fed.Appx. 336 (5th Cir. 2016), *pet. cert. filed*, No. 16–5371, —— U.S. ——, —— S.Ct. —— (U.S. July 27, 2016).

■ FRBP 8020(a) sanctions may also be "warranted where 'the overwhelming weight of precedent was against appellant's position, where appellant could set forth no facts to support its position, or where, in short, there simply was no legitimate basis for pursuing an appeal' " *In re Deshikachar (Collins v. Deshikachar)*, 2016 WL 826053, *7 (E.D. Mich. Mar. 3, 2016) (quoting *Ramirez v. Debs–Elias*, 407 F.3d 444, 450 (1st Cir. 2005)), *appeal filed*, No. 16–1332 (6th Cir. Mar. 21, 2016).

■ **At the least, the result of an appeal should be considered obvious if the result is dictated by a precedential[7] decision of the U.S. Supreme Court or U.S. Court of Appeals that controls the issue on appeal.** See *Nunley v. Commissioner*, 758 F.2d 372, 373 (9th Cir. 1985) (awarding attorneys fees and double costs to appellee where "[t]he Supreme Court and this Circuit have previously rejected all the arguments [appellant] raises"); *see also, e.g., In re Ly, Debtor (Ly v. Che)*,

Nos. CC–12–1395–DKiTa and LA 12–25257–TD, 2013 WL 2350915, *5–*6 (9th Cir. BAP May 29, 2013) (Dunn, Kirscher, Taylor, Bankr. JJ.) (not published in B.R.) ("Lopez should have known from our published opinions in *In re Veal* and *In re Edwards* that Panel precedent quite clearly recognizes that a party moving for relief from stay who has a colorable claim to ownership of the subject property has prudential standing. * * * We conclude that Ly's appeal is both meritless and frivolous, justifying the imposition of sanctions."), *affirmed*, 601 Fed.Appx. 494 (9th Cir. 2015).[8]

**Thus, when a reviewing court denies a bankruptcy appeal on the ground that binding precedent dictated that outcome,** it will be more difficult for the losing appellant to show that the appeal was nonetheless not frivolous. In this situation, a losing bankruptcy appellant may contend that the appeal was merely meritless, not frivolous, because there was a colorable (if ultimately unpersuasive) argument that the precedential decision was legally distinguishable from the case *sub judice*, factually distinguishable, or otherwise inapposite.

■ **Significantly, " '[a] finding of bad faith is not necessary to impose sanctions' "** under FRBP 8020(a). *See In re Ung (Takata v. Ung)*, Civil No. 15–

---

**7.** By contrast, the result of a bankruptcy appeal will not necessarily be considered "obvious" for FRBP 8020(a) purposes, where the appeal was denied merely because the appellate court chose to follow the reasoning of a *non-binding* decision which, if followed, "compelled" the denial of the appeal.

In such a situation, the question is whether the appellant made (or could have made) a colorable argument that the non-binding decision was distinguishable or simply unpersuasive or illogical. If there was such a colorable argument to be made against the appellate court's adoption of the non-binding authority, FRBP 8020(a) sanctions generally should not be imposed. *See In re Becraft, Debtor*, 885

F.2d at 549 (Ninth Circuit Court of Appeals declined to further sanction debtor for unsuccessful appeal, stating, "the cases that foreclosed [the debtor-appellant]'s arguments before the BAP . . . are not binding on this court. Accordingly, because a non-frivolous argument could be made that the reasoning of those cases should not be adopted by this Court, although no such argument was made, we decline to impose sanctions for a frivolous appeal in our discretion.").

**8.** A bankruptcy appeal's result may also be "obvious" or the appeal "wholly without merit" where the assignment of error was clearly barred by res judicata. *See In re Chandler*, 2016 WL 3545631 at *1.

00433–JMS–RLP, 2016 WL 1294404, *2 (D. Haw. Mar. 8, 2016) (Puglisi, M.J.) (quoting *United States v. Nelson (In re Becraft, Debtor)*, 885 F.2d 547, 549 (9th Cir. 1989)). "Generally, 'sanctions will be imposed [under FRBP 8020(a)] regardless of the motive of the appellant because the rule seeks to compensate an appellee who has had to waste time defending a meritless appeal.'" *Maloni v. Fairway Wholesale Corp. (In re Maloni)*, 282 B.R. 727, 734 (1st Cir. BAP 2002) (quoting 4 Lawrence P. King, Collier on Bankruptcy ¶ 8020.06 (15th ed. Rev. 2002) and citing, *inter alia, Top Entertainment, Inc. v. Ortega*, 285 F.3d 115 (1st Cir. 2002) and *Hill v. Norfolk & Western Railway Co.*, 814 F.2d 1192 (7th Cir. 1987)).

▮ **The reviewing court is still free, however, to consider whether the losing appellant acted in bad faith in bringing the appeal.** *See In re Becraft*, 885 F.2d at 549. In the court's discretion, any finding that the appellant brought the appeal in subjective bad faith may be a proper basis for increasing the monetary sanction imposed under FRBP 8020. *Cf., e.g., In re Prometheus Health Imaging, Inc. (Prometheus Health Imaging, Inc. v. U.S. Trustee)*, BAP No. CC–15–1422, 2016 WL 4198306, *6 (9th Cir. BAP Aug. 3, 2016) (Dunn, Kurtz, Faris) ("The record establishes that Prometheus filed its Chapter 11 petition in bad faith. This appeal is frivolous. Had there been an appellee participating in this appeal we would not have hesitated to determine [sic] this appeal frivolous and to award costs and fees as authorized by Rule 8020(a).").

▮ **An appeal does not become "wholly without merit" for purposes of FRBP 8020(a), however, merely because it rested on arguments that the appellate court ultimately found unpersuasive or "novel."** *See IMO So. Calif. Sunbelt Developers, Inc., Debtor (Orange Blossom Ltd' P'ship v. IBT Int'l, Inc.),* 412 Fed.Appx. 990 (9th Cir. 2011) (Schroeder, Fischer, N.R. Smith) (court should not have awarded 8020(a) sanction to appellee for appellant's punitive-damages argument where "appellants' novel 'infinite ratio' argument, although unpersuasive, was not 'wholly without merit.'"); *see also, e.g., In re Porto, Debtor (DeLauro v. Porto)*, 645 F.3d 1294, 1307 (11th Cir. 2011) ("As for DeLauro's appeal to the district court of the denial of his objections to the discharge, ... we can and do decide that the appeal was colorable (non-frivolous enough) to prevent the district court's denial of sanctions against DeLauro from being an abuse of discretion."); *In re Lipin (Lipin v. Estate of Walker)*, 2016 WL 3854453, *5 (D. Ariz. July 15, 2016) (Wake, Sr. J.) (denying winning appellee's FRBP 8020(a) application for an award of attorney's fees and costs, district judge stated, "Lipin's appeal is weak but not frivolous. He raises a genuine objection to a consequential ruling made by the bankruptcy court."), *appeal filed*, No. 16–16430 (9th Cir. Aug. 12, 2016).

Accordingly, the Court will afford the creditors an opportunity to show cause why the Court should not find their appeal to be frivolous and exercise its FRBP 8020(a) authority to award debtor Ashai the attorney's fees and costs he incurred in defending this appeal. *See In re Deshikachar (Collins v. Deshikachar)*, 2016 WL 826053, *7 (E.D. Mich. Mar. 3, 2016) (refusing to make an FRBP 8020(a) determination without full briefing, stating, "Based on Deshikachar's filings and the circumstances surrounding this case, the appeal to this Court may be frivolous, .... However, at this time ..., the issue of frivolousness has not been fully briefed. Therefore, the Court denies [winning appellee]'s request without prejudice.").

The Court will also afford debtor Ashai an opportunity to reply to any such

show-cause brief before ruling on the FRBP 8020(a) issue. *Cf. In re Sheidler, Debtor (Gaft v. Sheidler)*, No. 15–8011, 2016 WL 1179268, *1 n.1 (6th Cir. BAP Mar. 28, 2016) (after affirming bankruptcy court's dismissal of complaint, panel invited defendant-appellee to file "a separate motion . . . for the Panel's consideration" if appellee wanted to recover double costs of appeal or other sanction under FRBP 8020). Appellee Ashai *may* present argument or evidence in favor of the proposition that the appellants brought this appeal in bad faith, if there be any, but he need not establish bad faith in order to show the propriety of a FRBP 8020(a) award.

**The parties are advised that in deciding whether to find the appeal frivolous and award costs under FRBP 8020(a), the Court will consult cases applying Federal Rule of Appellate Procedure 38.** *See Woodson v. Ausmus*, 2016 WL 1268301, *5 (W.D. Ky. Mar. 31, 2016) (FRBP 8020 " 'is materially the same as Federal Rule of Appellate Procedure 38,' and thus [FRAP] 38 . . . and case law interpreting it provide 'guidance' when ruling on motions pursuant to Rule 8020.") (quoting *In re Michelle L. Reese, Debtor (WMS Motor Sales v. Reese)*, 485 Fed. Appx. 32, 35 (6th Cir. 2012) (Moore, Rogers, Richard Allen Griffin)); *In re Cinevision Int'l, Inc., Debtor (Mayor v. Wolkowitz)*, BAP No. CC–15–1227–FCTa, 2016 WL 638729, *8 (9th Cir. BAP Feb. 17, 2016) (Faris, Corbit, Taylor, Bankr. JJ.) (stating that FRBP 8020(a) "conforms to Civil Rule 38").

**Finally, appellants' potential FRBP 8020(a) liability for a frivolous appeal is not limited to the fees and costs that Ashai has already incurred to secure today's Order denying this appeal.** If the appellants file a brief attempting to show cause why the appeal should not be considered frivolous, Ashai files a response, and the Court determines that this appeal was frivolous, the Court will have the discretion to additionally require appellants to reimburse appellee Ashai for the attorney's fees and costs he incurred in preparing that response.

## ORDER

The Court **DENIES** the appeal of plaintiffs-creditors Kamran Ghadimi M.D. and Haleh Turkaman.

The Court **AFFIRMS** U.S. Bankruptcy Judge Robles's June 9, 2014 Judgment of Dischargeability in Bankruptcy Case No. 2:13–bk–11265–ER, Adversary Proceeding No. 2:13–ap–01448–ER, for the reasons stated herein at pages 20–28 and *not* for the reasons stated in the Bankruptcy Judge's May 30, 2014 oral ruling.

**Per FRBP 8021(a)(2), non-fee costs of appeal are taxable against appellants, payable to appellee.**

Per FRBP 8021(d), if appellee "wants costs taxed," he "must, within 14 days after entry of judgment on appeal, file with the bankruptcy clerk, with proof of service, an itemized and verified bill of costs."

The Court will issue a separate judgment in favor of appellee Ashai consistent with this Order.

**No later than Friday, October 28, 2016, creditors-appellants MAY SHOW CAUSE** why the Court should not find their appeal to be frivolous and exercise its Fed. R. Bankr. P. 8020(a) authority to require them to pay damages and/or double the costs that the appellee incurred in defending against this appeal.

No later than Friday, November 12, 2016, debtor-appellee Tony Ashai **MAY FILE** a response.

No later than Friday, November 26, 2016, creditors-appellants **MAY FILE** a reply.

In lieu of a response to the Order to Show Cause, the creditor-appellees instead **MAY FILE** a notice advising that they have reached an agreement with debtor-appellee Ashai regarding their payment of some or all of the attorney's fees and costs he incurred in defending against this appeal.

This is a final order and may be immediately appealed to the U.S. Court of Appeals for the Ninth Circuit.[9]

IT IS SO ORDERED.

---

**9.** *See In re EPD Inv. Co., LLC, and Pressman, Debtors (Kirkland v. Rund)*, 821 F.3d 1146, 1149–50 (9th Cir. 2016) (*"EPD"*) ("Generally, we review, a bankruptcy court's decision independently and without deference to the district court's decision.") (citing *IMO JTS Corp.,* *Debtor (Decker v. Tramiel)*, 617 F.3d 1102, 1109 (9th Cir. 2010) (*"Decker"*)). The Ninth Circuit will review the bankruptcy's factual findings only for clear error but will review its legal conclusions de novo. *See EPD*, 821 F.3d at 1150 (citing *Decker*, 617 F.3d at 1109).