

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>OLIVIER FRANCOIS P. RIGON and<br>CHRISTINE HUI SEOUN KWON,<br>　　　　　　　Debtors. | BAP No. WW-25-1072-CNG<br><br>Bk. No. 2:21-bk-11641-CMA<br><br>Adv. No. 2:22-ap-01012-CMA |
| OLIVIER FRANCOIS P. RIGON;<br>CHRISTINE HUI SEOUN KWON,<br>　　　　　　　Appellants,<br>v.<br>EUROPAKIDS PRESCHOOL, LLC,<br>　　　　　　　Appellee. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Western District of Washington
Christopher M. Alston, Chief Bankruptcy Judge, Presiding

Before: CORBIT, NIEMANN, and GAN, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtors Olivier Rigon and Christine Kwon ("Debtors")

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of

appeal the bankruptcy court's summary judgment order determining the amount of debt owed to creditor, EuropaKids Preschool, LLC ("EuropaKids"). Because the bankruptcy court did not err in granting summary judgment, we AFFIRM.

## FACTS[2]

Debtors moved to Washington and married in 2016. Ms. Kwon, a licensed real estate broker, formed Rock PI, LLC ("Rock PI") to purchase, renovate, rent, and sell real properties. Since its formation, Ms. Kwon has been the sole managing member of Rock PI, and she managed its finances. For a few years, Rock PI was profitable and expanded using a model of purchasing older or rundown homes, renovating them, and selling or renting the properties for a profit.

Mr. Rigon was employed by Rock PI although he often held himself out as a co-founder. His primary role was to manage projects. Mr. Rigon attended various real estate networking events where he marketed Rock PI's projects to potential investors.

To fund Rock PI's projects, the Debtors used conventional bank loans and funds invested by "friends and family." In July 2019, Ms. Kwon sent an email to Kelly Milbrandt, a member and manager of EuropaKids, inquiring

---

Civil Procedure.

[2] We exercise our discretion, when appropriate, to take judicial notice of documents electronically filed in the underlying bankruptcy case and related proceedings. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

whether EuropaKids wanted to invest $50,000 in Rock PI, for a twelve-month term at 12% interest. Ms. Milbrand was told by Ms. Kwon that the funds would be used to renovate and add a detached accessory dwelling unit ("DADU") to the real property located on 29th Ave. E. in Seattle, Washington ("Pink Property").

Based on Ms. Kwon's representations about a favorable return, EuropaKids loaned the funds ("Loan"). The Loan was memorialized in a promissory note between EuropaKids and Rock PI, executed on July 22, 2019 ("Loan Agreement"). Although the Loan was personally guaranteed by Ms. Kwon, the Loan was not secured by the Pink Property.

Rock PI made some interest-only payments on the Loan in 2019 and 2020, but it stopped making regular payments in June 2020. When the Loan maturity date (July 19, 2020) passed without the required payment from Rock PI, EuropaKids sent a notice of Loan default.

On August 30, 2021, the Debtors filed a voluntary chapter 7 petition and Michael P. Klein was appointed the chapter 7 trustee (the "Trustee").[3] The Trustee informed the Debtors that information and assets were missing from their schedules and statement of financial affairs.[4] Despite being

---

[3] Rock PI filed a separate chapter 7 petition in February 2021.

[4] For example, the Trustee noted that the Debtors had not scheduled: their interest in an irrevocable trust which named Ms. Kwon as trustor and Mr. Rigon as primary beneficiary; their interest in an AIG life insurance policy owned by the Trust with Mr. Rigon named as beneficiary; the rent and sale proceeds from certain "Denny Street Properties;" Ms. Kwon's interest in other companies including a 50% interest in Sands Partners, LLC and her 25% interest in Sands Holdings, LLC which held title to a

aware of the errors, the Debtors did not timely correct their schedules. Indeed, their ongoing failure to provide necessary information and disclose all their assets resulted in eleven § 341 meetings of creditors. The Debtors' single amendment to their bankruptcy schedules was filed in March 2022, and the amendment simply reduced the value of one vehicle from approximately $9,000 to $6,000. Additionally, the Debtors failed to timely provide their tax returns. The Debtors did not finalize their 2018 return until November 2022 and still had not produced their 2019 and 2020 returns as of September 27, 2023.

Consequently, on March 30, 2022, the United States Trustee (the "UST") filed an adversary complaint to deny each Debtor's discharge pursuant to § 727 ("§ 727 Action"). The UST alleged that the Debtors were not entitled to a discharge because the Debtors failed to keep adequate records, concealed assets, made false oaths, and failed to adequately explain the loss of community assets.

On the same day the UST filed the § 727 Action, EuropaKids filed a complaint ("Complaint") seeking to except from discharge the debt of Rock PI that was personally guaranteed by Ms. Kwon ("Nondischargeability Proceeding"). The Complaint sought liquidation of the amount of the debt and a determination that the debt was nondischargeable based on fraud pursuant to § 523(a)(2)(A). In its "Prayer For Relief," EuropaKids sought a

hotel in Ocean Shores, Washington; their interest in a Bank of America savings account; and payments made by their Trust totaling over $100,000.

4

determination that its "claim, in an amount to be proven at trial but no less than $60,694.52, and including all interests, fees, costs, and additional damages allowed under contract and/or statute, should be excepted from any discharge otherwise awarded to the Debtors." EuropaKids also requested an award of costs and attorney's fees, along with "other relief as the Court deems just and equitable."

The Debtors answered the Complaint on May 16, 2022, admitting to the Loan but generally denying the facts as alleged in the Complaint.

On May 26, 2022, the parties presented a "stipulated motion for entry of order staying" the Nondischargeability Proceeding until the § 727 Action was resolved. The motion acknowledged the UST's pending § 727 Action. The parties contended that if the UST was successful "and both of the Debtors' discharges are denied," the Nondischargeability Proceeding would "become[] meaningless." The parties asserted that "[g]iven . . . the likelihood that certain issues in the [Nondischargeability Proceeding] will be resolved or mooted by findings" in the § 727 Action, it would be "reasonable" to wait to prosecute the Nondischargeability Proceeding.

The bankruptcy court agreed and entered an order staying the Nondischargeability Proceeding. The stay order granted leave to either party to "request an order lifting this stay and for a new pretrial conference and scheduling order following partial dispositive motions practice or the conclusion" of the § 727 Action.

The bankruptcy court conducted a trial in the § 727 Action in October

2023. After trial, the bankruptcy court entered an order denying Ms. Kwon's discharge under § 727(a)(2)(B), (a)(3), (a)(4), and (a)(5). The bankruptcy court denied Mr. Rigon's discharge under § 727(a)(3), (a)(4), and (a)(5), (together, the "Discharge Denial Order"). The denial of Mr. Rigon's discharge was affirmed by this Panel. Ms. Kwon did not appeal the denial of her discharge.

After entry of the Discharge Denial Order, EuropaKids filed a motion to lift the stay in the Nondischargeability Proceeding solely to seek a determination and judgment as to the amount of the Debtors' debt to EuropaKids. EuropaKids contended that although the "denial of the Debtors' discharges makes that portion of Plaintiff's complaint seeking an exception to discharge under § 523 moot," the amount of Debtors' liability remained unresolved. EuropaKids asserted it was "entitled to seek entry of a judgment and to collect upon that judgment going forward."

The Debtors objected. The Debtors reasoned that because their discharge was denied, none of their debts would be discharged. Therefore, Debtors argued, the Nondischargeability Proceeding was moot, and no reason existed to lift the stay. The Debtors further argued that because the bankruptcy court is a court of limited jurisdiction, pursuant to *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), the court lacked jurisdiction because "the outcome" of the Nondischargeability Proceeding could not "conceivably have any effect on the estate being administered in bankruptcy." The Debtors asserted that EuropaKids should prosecute the

6

Loan Agreement dispute in state court.

In its reply, EuropaKids discounted the Debtors' new jurisdictional argument by pointing out that the Debtors had not objected to the bankruptcy court's jurisdiction in their answer. EuropaKids further argued the Debtors' had implicitly consented to jurisdiction pursuant to local bankruptcy rule ("LBR") 7012-1(c) by failing to file a notice regarding adjudication and consent.[5] EuropaKids also disagreed that its claim was moot because the Complaint raised *both* the issue of the Debtors' "liability under a personal guarantee included in a promissory note, *and* that the guaranty obligation should be excepted from any discharge otherwise granted due to fraud." Finally, EuropaKids argued that it was unfair to make it start over and adjudicate the issue in state court "because the [D]ebtors were found to have behaved so badly that they lost their right to

---

[5] LBR 7012-1states in relevant part:
(a) Notice Regarding Final Adjudication and Consent. In an adversary proceeding before a bankruptcy judge, in addition to the statements in the pleadings required by Fed. R. Bankr. P. 7008(a) and 7012(b), each party shall file a separate document with its initial pleading (the complaint, counterclaim, cross-claim, third party complaint, answer or other responsive pleading) to be entitled Notice Regarding Final Adjudication and Consent. The Notice Regarding Final Adjudication and Consent shall include a repetition of the statements required by Fed. R. Bankr. P. 7008(a) and 7012(b).
. . . .
(c) Deemed Consent. Failure by a party to file a Notice Regarding Final Adjudication and Consent as required by this rule or by a date certain fixed by court order shall constitute that party's consent to entry of final orders or judgments by the bankruptcy judge.

a bankruptcy discharge."

After a hearing, the court issued an oral ruling granting EuropaKids's motion to lift the stay. The bankruptcy court found that "even though the discharge issue ha[d] been decided, the liability amount ha[d] not, and at least at some point, the parties agreed that this court could make that determination." The court opined that although there might be grounds for the bankruptcy court to abstain or dismiss given the denial of the Debtors' discharge, the Debtors had not presented any such motions. The bankruptcy court issued a written order consistent with its oral ruling.

EuropaKids subsequently filed a motion for summary judgment. EuropaKids asserted that it was entitled to summary judgment as a matter of law because the material facts supporting each element of its claim were undisputed and supported by documentary evidence. EuropaKids asserted it was undisputed that: (1) the Debtors solicited a $50,000 loan from EuropaKids to develop a Seattle property even though the Debtors "never intended to do so"; (2) EuropaKids loaned the Debtors $50,000 in reliance on the Debtors' false representations; (3) the Loan was personally guaranteed by Ms. Kwon; (4) the Debtors failed to repay the Loan; and (5) EuropaKids suffered $60,694.52 in damages as of the date of the Debtors' bankruptcy filing.

The Debtors did not respond with any evidence or argument demonstrating the facts as alleged by EuropaKids were erroneous. Rather, the Debtors argued that summary judgment was not appropriate because

EuropaKids was attempting to litigate a contract claim that no longer had a relationship to the bankruptcy case. The Debtors asserted that only a single cause of action was pled in the Complaint—nondischargeability pursuant to § 523(a)(2)—not breach of contract. Because EuropaKids did not intend to prosecute a nondischargeability claim, the Debtors argued that the bankruptcy court had no jurisdiction to liquidate the unpled contract claim.

EuropaKids moved to strike the Debtors' response because it was untimely. EuropaKids additionally argued that the bankruptcy court retained jurisdiction "to enter a money judgment on a disputed state law claim in the course of determining the dischargeability of that debt under § 523."

On March 31, 2025, the bankruptcy court held a hearing on EuropaKids's motion for summary judgment.[6] At the hearing, Debtors' counsel maintained that the court lacked jurisdiction to liquidate the unpled breach of contract claim because the determination of dischargeability was moot. While Debtors' counsel admitted that the bankruptcy court had the authority and jurisdiction to liquidate a contract claim in conjunction with determining the nondischargeability of such claim, he argued those were not the facts of the present case. Rather, contended counsel, because the bankruptcy court was not being asked to adjudicate dischargeability, the bankruptcy court lost jurisdiction over the

---

[6] The bankruptcy court granted EuropaKids's motion to strike the Debtors' late-filed response but allowed counsel to present the Debtors' argument at the hearing.

Complaint. Debtors' counsel further argued that the court had not made a fraud finding in the § 727 Action and that EuropaKids had failed to plead sufficient facts to support a finding that the Loan was acquired through fraud as required under § 523(a)(2)(A).

EuropaKids rejected the Debtors' premise, arguing that "[t]here's no authority for the proposition that bankruptcy court jurisdiction goes away if the discharge action is mooted by a [§] 727 finding." EuropaKids also asserted that although the Debtors alleged that the bankruptcy court had no jurisdiction, they had not sought affirmative relief to litigate the action in a court they believed had jurisdiction (e.g., by filing a motion to dismiss or by removing the action to state court).

After hearing from the parties, the bankruptcy court issued an oral ruling granting EuropaKids's summary judgment motion. The bankruptcy court made several findings of fact and conclusions of law including the following: (1) the adversary case was a core matter under 28 U.S.C. § 157(b)(2)(A), (I), and (O); (2) the Debtors consented to the bankruptcy court's jurisdiction by filing the bankruptcy; (3) the bankruptcy court also had jurisdiction under 28 U.S.C. § 1334(b) because there was "still an underlying main case"; (4) the Debtors had failed to provide any case law demonstrating that "once a [§] 727 action is adjudicated, the court loses jurisdiction to determine liability in a [§] 523 matter"; (5) the court could find no binding Ninth Circuit decisions on the jurisdiction issue raised by the Debtors; (6) the Judgment was a community debt because "the

10

signatures of both spouses is not necessary to bind the community where the judgment being sought is for money only"; (7) EuropaKids provided evidence of the Loan, the failure to repay the Loan, and the amount of damages; (8) the Debtors had not provided evidence rebutting the "calculation of the debt or Ms. Kwon's responsibility for it"; and (9) the Debtors had not sought dismissal of the Nondischargeability Proceeding.

The bankruptcy court entered a written order and judgment consistent with its oral ruling awarding EuropaKids $95,464.52 in damages ("Judgment").

Debtors timely appealed the Judgment.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether the bankruptcy court had jurisdiction over the Nondischargeability Proceeding after entry of the Discharge Denial Order.

Whether the bankruptcy court erred in granting EuropaKids's summary judgment motion.

Whether the Debtors' appeal is frivolous.

## STANDARDS OF REVIEW

Whether the bankruptcy court has authority to enter a final order is an issue we review de novo. *See Hasse v. Rainsdon (In re Pringle)*, 495 B.R. 447, 455 (9th Cir. BAP 2013). The bankruptcy court's decision whether to

retain jurisdiction is reviewed for abuse of discretion. *See Linkway Inv. Co. v. Olsen (In re Casamont Invs., Ltd.)*, 196 B.R. 517, 522-23 (9th Cir. BAP 1996).

We review de novo the bankruptcy court's decision to grant summary judgment. *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 461 (9th Cir. BAP 2015). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted).

We may affirm on any basis supported by the record. *Caviata Attached Homes, LLC v. U.S. Bank, N.A. (In re Caviata Attached Homes, LLC)*, 481 B.R. 34, 44 (9th Cir. BAP 2012).

## DISCUSSION

### A.    The bankruptcy court's jurisdiction.

"Like all federal courts, the jurisdiction of the bankruptcy courts is created and limited by statute." *Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Wilshire Courtyard)*, 729 F.3d 1279, 1284 (9th Cir. 2013) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995); *Battle Ground Plaza, LLC v. Ray (In re Ray)*, 624 F.3d 1124, 1131 (9th Cir. 2010)). A bankruptcy court's jurisdiction is governed by 28 U.S.C. §§ 157 and 1334.

### I.    The entry of the Discharge Denial Order did not moot the issue of whether the debt to EuropaKids was dischargeable.

The jurisdiction of federal courts is limited to actual cases and controversies. U.S. Const. art. III, § 2, cl. 1. "The test for mootness . . . is

12

whether the . . . court can give the [party] any effective relief in the event that it decides the matter on the merits in his favor." *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 880 (9th Cir. 2012) (quotation marks and citation omitted). If it cannot grant such relief, the matter is moot. *Id.*

From the record it is clear that both EuropaKids and the bankruptcy court believed that the issue of dischargeability was mooted upon the entry of the Discharge Denial Order. This was error.

If a debtor is denied a discharge pursuant to § 727, no debts are discharged in the current bankruptcy and no debts which were listed or could have been listed can be discharged in any future *chapter 7 case* ("§ 523(a)(10) Debts").[7] *See* § 523(a)(10), (b); *Paine v. Griffin* (*In re Paine)*, 283 B.R. 33, 37 (9th Cir. BAP 2002) ("The rule is that res judicata principles apply in bankruptcy so that once a debt is 'excepted from discharge' in a judgment . . . it is . . . 'excepted from discharge' in all subsequent chapter 7 cases . . . .") (citation modified).

However, pursuant to § 1328(a), it may be possible for the debtor who was denied a discharge in a current chapter 7 case to discharge some or all of the § 523(a)(10) Debts in a future chapter 13 bankruptcy case after

---

[7] Section 523(a)(10) describes a debt "that was or could have been listed or scheduled by the debtor in a prior case concerning the debtor under this title or under the Bankruptcy Act in which the debtor waived discharge, or was denied a discharge under section 727(a)(2), (3), (4), (5), (6), or (7) of this title, or under section 14c(1), (2), (3), (4), (6), or (7) of such Act."

13

successfully completing all confirmed plan payments. This is because "Congress secured a broader discharge for debtors under Chapter 13 than Chapter 7 by extending to Chapter 13 proceedings some, but not all of § 523(a)'s exceptions to discharge." *Pa. Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 563 (1990); *see also* 8 *Collier on Bankruptcy* § 1328.01 (16th ed. 2026) (describing the Chapter 13 discharge as "broader than the discharge received in any other chapter of the Code, encompassing many types debts that would be nondischargeable in chapter 7, chapter 11, or chapter 12."). The discharge in chapter 13 is often referred to as a "super discharge" because it encompasses the discharge of many debts that would not be dischargeable under other chapters of the Bankruptcy Code.

Congress has since added some sections restricting the chapter 13 "super discharge." *See In re Lavilla*, 425 B.R. 572, 581 (Bankr. E.D. Cal. 2010) (explaining that "[p]rior to the enactment of BAPCPA, chapter 13 included the 'super discharge' whereby debtors could complete their chapter 13 plan and discharge certain debts that would not otherwise be dischargeable in chapter 7 pursuant to § 523"). Importantly, the § 1328(a) super discharge continues to discharge § 523(a)(10) Debts.

Consequently, § 523(a)(10) Debts may be dischargeable in a future chapter 13 bankruptcy *unless* there is an independent basis for excepting that debt. Applicable to this case are the exceptions added to § 1328(a)(2) which now except from the super discharge, § 523(a)(2) debts. *Waag v. Permann (In re Waag)*, 418 B.R. 373, 377 (9th Cir. BAP 2009) (explaining that

in 2005, Congress restricted the chapter 13 "super discharge" by "expand[ing] the list of nondischargeable debts in section 1328(a)(2) to include, *inter alia*, those described in section 523(a)(2), (a)(3), or (a)(4)."[8] Therefore, unless a creditor obtains an independent reason to preclude the debt from being discharged (e.g. § 523(a)(2) nondischargeability determination),[9] § 523(a)(10) Debts may be discharged in a future chapter 13 bankruptcy.

Based on the foregoing, the Discharge Denial Order did not moot EuropaKids's § 523(a)(2)(A) claim. Rather, without commenting on the likelihood of the Debtors' ability to both confirm and complete a chapter 13 plan, the possibility exists that the Judgment could be discharged in the future pursuant to § 1328(a). Thus, *both* the amount and the dischargeability of the Debtors' liability to EuropaKids remained live controversies after entry of the Discharge Denial Order.

---

[8] In relevant part § 1328(a)(2) provides that the bankruptcy "court shall grant the debtor a discharge of all debts provided for by the plan . . . except any debt—

. . . .

(2) of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a);"

[9] This premise depends on the debtor obtaining a full compliance discharge pursuant to § 1328(a). Section 1328(b), on the other hand, provides for a "hardship discharge" under chapter 13. In contrast to the typical discharge under § 1328(a)—which incorporates some but not all the provisions of § 523(a)—the entirety of § 523(a) is made applicable to chapter 13 debtors receiving a hardship discharge under § 1328(b). *See* § 1328(c); *see also Lafferty v. Off-Spec Sols., LLC (In re Off-Spec Sols., LLC)*, 651 B.R. 862, 869-71 (9th Cir. BAP 2023) (examining to which sections of the Bankruptcy Code § 523(a) applies).

The issue is also not moot because EuropaKids is likely precluded from seeking such a determination in future proceedings. The doctrine of claim preclusion, prohibits relitigation "of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 412 (2020) (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)). Thus, the doctrine of claim preclusion likely prevents EuropaKids from litigating the dischargeability of the Judgment in future proceedings.

## II. EuropaKids's decision not to litigate all aspects of its claim did not affect the bankruptcy court's jurisdiction.

"Subject matter jurisdiction defines the court's authority to hear a given type of case; it represents the extent to which a court can rule on the conduct of persons or the status of things." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citation modified). Subject matter jurisdiction is measured at the time a complaint is filed. *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570–71 (2004).

Bankruptcy courts, via referral from the district courts, "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). The terms "arising under" and "arising in" are "terms of art." *Eastport Assocs. v. City of L.A. (In re Eastport Assocs.)*, 935 F.2d 1071, 1076 (9th Cir. 1991).

16

Core proceedings are considered synonymous with "arising under" and "arising in" jurisdiction. *See Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431, 1435 (9th Cir. 1995) ("claims that arise under or in Title 11 are deemed to be 'core' proceedings, while claims that are related to Title 11 are 'noncore' proceedings") (citation omitted). "A matter 'arises under' the Bankruptcy Code if its existence depends on a substantive provision of bankruptcy law, that is, if it involves a cause of action created or determined by a statutory provision of the Bankruptcy Code." *In re Ray*, 624 F.3d at 1131 (citations omitted). A proceeding "arises in" a case under the Code "if it is an administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum, but whose cause of action is not expressly rooted in the Bankruptcy Code." *Id.* (citation omitted). An action is "related to" a bankruptcy case if the outcome of the proceeding could conceivably "alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)" in such a way as to impact the administration of the bankruptcy estate. *Fietz v. Great W. Sav. & Loan Assoc. (In re Fietz)*, 852 F.2d 455, 457 (9th Cir. 1988) (adopting test announced in *Pacor, Inc.*, 743 F.2d at 994).

"[D]eterminations as to the dischargeability of particular debts" are core proceedings. 28 U.S.C. § 157(b)(2)(I). Thus, the bankruptcy court had not just core but exclusive jurisdiction over the Complaint. *See Ackerman v. Eber (In re Eber)*, 687 F.3d 1123, 1128 (9th Cir. 2012); *Golman v. Gerard, (In re*

*Gerard)*, BAP No. CC141028KiTaD, 2014 WL 6892733, at *6 (9th Cir. BAP Dec. 8, 2014) ("The adversary proceeding involves the dischargeability of a debt. Such a proceeding 'arises under' the Bankruptcy Code, because it is a cause of action created by § 523 and is a 'core' proceeding the bankruptcy court may hear and determine.") (citation omitted).

By agreement of the parties, the Nondischargeability Proceeding was stayed until the § 727 Action concluded. After the Debtors were denied their discharge, the stay was lifted in the Nondischargeability Proceeding and EuropaKids pursued liquidation of the Loan debt. Importantly, EuropaKids did not withdraw its Complaint or withdraw its claim that the debt owed by the Debtors was not dischargeable. Rather, EuropaKids simply chose not to litigate whether the Debtors' liability qualified as a nondischargeable debt pursuant to § 523(a)(2)(A) because it was "obtained by . . . false pretenses, a false representation, or actual fraud" based on the mistaken belief that the issue was moot. As explained above, the issue of dischargeability of the debt was not moot. Regardless, EuropaKids's decision to litigate only part of its claim did not deprive the bankruptcy court of jurisdiction as jurisdiction is determined at the time a complaint is filed.

**III.    The bankruptcy court had discretion to retain jurisdiction.**

The correct inquiry is whether the bankruptcy court properly retained jurisdiction. Here, because the only issue brought before the bankruptcy court was the liquidation of damages resulting from the

18

alleged breach of the Loan Agreement, the bankruptcy court should have considered whether retaining jurisdiction was proper. "[A] federal court has a continuing obligation to consider the appropriateness of retaining jurisdiction throughout the course of the proceeding." *In re Casamont Invs.*, 196 B.R. at 525 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, (1988)). "Unlike nondischargeability determinations, claims for money damages do not 'arise in' or 'arise under' the Bankruptcy Code. They exist independent of the bankruptcy process. They are claims against the debtor, not against the estate." *Dietz v. Ford* (*In re Deitz*), 760 F.3d 1038, 1053 (9th Cir. 2014).

While no binding authority exists,[10] an adversary action continuing after discharge is denied is comparable to an adversary action continuing

---

[10] In *Menk v. Lapaglia (In re Menk)*, 241 B.R. 896, 905 (9th Cir. BAP 1999) there is a statement which, at first blush, appears to be inconsistent with our jurisdictional analysis. The Panel stated in dicta "[i]f the bankruptcy discharge has been denied or revoked, then the exercise of [28 U.S.C.] § 1334(b) jurisdiction to determine any exception to discharge would be a purely theoretical exercise, hence moot." *Id.* However, *Menk* is distinguishable and not controlling. In *Menk*, the issue was whether the bankruptcy court erred in reopening a closed bankruptcy case. There, unlike the facts in this case, the debtor received a discharge and was attempting to prevent omitted creditors from reopening his case to file a § 523(a)(3)(B) nondischargeability adversary action. The bankruptcy court allowed the creditors to reopen the case and Menk appealed. The *Menk* Panel dismissed the appeal as moot, holding that "[r]eopening is irrelevant to the bankruptcy court's jurisdiction to determine whether a debt is excepted from discharge. Hence, no effective relief could be fashioned if we were to reverse the reopening." *Id.* at 902. The *Menk* Court explained that 28 U.S.C. § 1334 containes no explicit requirement that a "case" be open under 28 U.S.C. § 1334(a) for a court to act in a "civil proceeding" under 28 U.S.C. § 1334(b). *Id.* at 904-05. Rather, 28 U.S.C. § 1334(b) grants concurrent jurisdiction over civil proceedings, separate and distinct from exclusive jurisdiction over bankruptcy cases under § 1334(a). "Since this

after the dismissal of the underlying bankruptcy case.[11] In the Ninth

Circuit, bankruptcy courts are not automatically divested of jurisdiction

over related cases when the underlying bankruptcy case has been

dismissed. *Carraher v. Morgan Elecs., Inc. (In re Carraher)*, 971 F.2d 327, 328

(9th Cir. 1992) (per curiam) (rules governing bankruptcy court's

jurisdiction over claims related to a terminated bankruptcy proceeding are

guided by rules governing "the authority of federal district courts to retain

pendent state claims after the federal claims have been dismissed").

Instead, courts should consider whether judicial economy, convenience,

fairness, and comity favor retaining jurisdiction. *Id.* at 328.

Here, the bankruptcy court did not engage in an analysis of whether

retaining jurisdiction was proper based on considerations of "economy,

convenience, fairness and comity." *Id.* However, it is not necessary to

remand to the bankruptcy court when the Panel has a sufficient record to

perform the same analysis. *See Hopkins v. Asset Acceptance LLC (In re

Salgado-Nava)*, 473 B.R. 911, 922 (9th Cir. BAP 2012); *Moen v. Hull (In re

Hull)*, 251 B.R. 726, 731 (9th Cir. BAP 2000).

---

straightforward language does not refer to the existence of a 'case' under [28 U.S.C.] § 1334(a), the text of the statute does not appear to require that the bankruptcy case must be open in order to exercise [28 U.S.C.] § 1334(b) 'arising under' jurisdiction." *Id.* at 905.

[11] The Debtors cite cases from other circuits determining that a § 523 action is moot after a § 727(a) determination. The holdings are not binding on this Panel and importantly fail to recognize that debts, not discharged solely because a debtor is denied a discharge, are potentially dischargeable in a future chapter 13 bankruptcy case.

After examining the record and applying the *Carraher* factors, we determine the bankruptcy court did not abuse its discretion by retaining jurisdiction.

Judicial economy and convenience to the parties are often analyzed together due to their similarity. Both factors relate to the amount of time and effort the court and parties have spent on the adversary proceeding. Judicial economy relates to the interests of the court currently presiding over the case in question while convenience focuses on the efforts already expended by the litigants.

Here, the underlying dispute between the Debtors and EuropaKids arose prepetition. Although filed in 2022, the Nondischargeability Proceeding was stayed for nearly three years, and the docket reveals scant activity by the litigants or the court until the stay was lifted. However, forcing the parties to start over in another forum would require additional expense and inconvenience for all parties. Therefore, these factors weigh in favor of retaining jurisdiction.

The fairness factor also weighs in favor of retaining jurisdiction. Requiring EuropaKids to start over in another forum would be unfair. By choosing to file a petition in the bankruptcy court, the Debtors chose the forum in which EuropaKids had to assert its rights as a creditor. The record demonstrates that EuropaKids intended to simultaneously litigate the amount and dischargeability of liability in the forum chosen by the Debtors. Additionally, EuropaKids voluntarily agreed to wait for three

years to litigate its claim (allowing the § 727 Action and its appeal to conclude). If the bankruptcy court declined to exercise jurisdiction, this would further delay the adjudication of EuropaKids's claim, placing EuropaKids at an unfair disadvantage.

Comity is a principle that means "all else being equal, state issues ought to be decided by state courts." *In re Casamont Investors, Ltd.*, 196 B.R. at 524. The breach of contract issue was not complex and was well within the bankruptcy court's expertise. As a result, concerns regarding comity do not weigh against the retention of jurisdiction.

Based on the foregoing, the bankruptcy court did not abuse its discretion in retaining jurisdiction over the Nondischargeability Proceeding after entry of the Discharge Denial Order. Because exercising jurisdiction was proper, the bankruptcy court had authority to liquidate the debt. *See, e.g., Locke v. United States Tr. (In re Locke)*, 205 B.R. 592, 600 (9th Cir. BAP 1996) ("There is no meaningful distinction between the determination of liability and damages for the purpose of dischargeability, and the determination of liability and damages for the purpose of allowing or disallowing an unliquidated and disputed proof of claim."); *Stanbrough v. Valle (In re Valle)*, 469 B.R. 35, 43 (Bankr. D. Idaho 2012) ("In the case of an unliquidated debt, the bankruptcy court must necessarily determine liability and damages in order to establish the underlying debt.").

**B.** **The bankruptcy court did not err in granting summary judgment.**

**I.** **Summary judgment standards.**

Under Civil Rule 56(a), made applicable in adversary proceedings by Rule 7056, summary judgment should be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A factual issue is genuine when sufficient evidence exists for a reasonable trier of fact to find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001). And an issue is material when it could affect the outcome of the case under the controlling substantive law. *Anderson*, 477 U.S. at 248; *Far Out Prods., Inc.*, 247 F.3d at 992.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact. *Anderson*, 477 U.S. at 256-57. If the movant meets this burden by presenting sufficient uncontroverted facts to demonstrate its entitlement to relief, the burden then shifts to the responding party to establish that there is a specific and genuine issue of material fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.3 (1986); *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008). The nonmovant "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery materials, to show that the dispute exists." *In re Barboza*, 545 F.3d at 707 (quoting *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir.1991)).

In deciding whether a genuine factual issue exists, the court must draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But the court must do so only if a non-moving party submits specific evidence that contradicts a fact specifically averred by the moving party. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). If a motion for summary judgment is properly supported and the non-movant does not set forth specific facts showing a genuine issue for trial, the court must grant summary judgment. Civil Rule 56(a).

## II.     The bankruptcy court determined liability not dischargeability.

On appeal, the Debtors argue the bankruptcy court erred in granting summary judgment because insufficient evidence was presented for the bankruptcy court to find the Judgment nondischargeable pursuant to § 523(a)(2)(A). Specifically, the Debtors argued that EuropaKids failed to establish the Loan was obtained by fraud, false pretenses, or false representation. We agree.[12] We also determine that the Debtors

---

[12] Section 523(a)(2)(A) excepts from a debtor's discharge any debt for money obtained by false pretenses, a false misrepresentation or actual fraud. In order to prevail on a § 523(a)(2)(A) cause of action, a creditor must establish five separate elements by a preponderance of the evidence:

> (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

misconstrue the Judgment.

The bankruptcy court did not make a specific § 523(a)(2)(A) determination.[13] Rather, the bankruptcy court reduced to judgment its determination of the amount of damages EuropaKids suffered as a result of Rock PI's breach of the Loan Agreement.

**III.        Application of summary judgment standards.**

The bankruptcy court determined that EuropaKids was entitled to summary judgment because no genuine issues of material fact existed as to the formation and breach of the Loan Agreement or the damages that resulted.

The Debtors have not pointed to evidence demonstrating the bankruptcy court's findings to be clearly erroneous and we do not find

_Ghomeshi v. Sabban (In re Sabban)_, 384 B.R. 1, 5 (9th Cir. BAP 2008) (citing _Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)_, 234 F.3d 1081, 1085 (9th Cir. 2000)). An intentional breach of contract generally will not give rise to a nondischargeable debt. _In re Jercich_, 238 F.3d 1202, 1205 (9th Cir. 2001). "[F]ailure to perform as promised, standing alone, gives rise to a case for breach of contract, not actionable fraud." _In re Yaikian_, 508 B.R. 175 (Bankr. S.D. Cal. 2014) (quoting _Stominger v. Giquinto (In re Giquinto)_, 388 B.R. 152, 166 (Bankr. E.D. Pa. 2008)).

EuropaKids did not present evidence of specific fraudulent statements or comments or evidence of the intention not to perform when the Loan Agreement was formed as required to succeed on a § 523(a)(2)(A) claim. _See Rubin v. West (In re Rubin)_, 875 F.2d 755, 759 (9th Cir. 1989).

[13] The Judgment identifies the parties, the judgment amount ($95,464.52), and the rate of accrual for post-judgment interest (18%). The Judgment does not include a § 523(a)(2)(A) determination. Thus, although a blanket of nondischargeability covers the Judgment because of the denial of Debtors' discharge pursuant to § 727(a)(3), (a)(4), and (a)(5), the bankruptcy court did not make a separate determination that the Judgment was not dischargeable pursuant to § 523(a)(2).

them to be so. Indeed, the record supports the findings and the bankruptcy court's determination that EuropaKids was entitled to summary judgment.

In support of its motion, EuropaKids submitted admissible evidence (copies of the documents related to the Loan Agreement) establishing the formation of a valid contract between Rock PI and EuropaKids. The Loan Agreement demonstrated that EuropaKids agreed to loan Rock PI $50,000 which Rock PI agreed to repay within twelve months with interest. The Loan Agreement evidenced Ms. Kwon's intent to personally guaranteed the debt. EuropaKids also presented admissible evidence demonstrating that Rock PI failed to repay the Loan and EuropaKids was entitled to damages, in the amount calculated and presented to the court via declaration and spreadsheet.

The burden then moved to the Debtors to establish a genuine issue as to the validity of the Loan Agreement, the breach, the signature and personal guarantee of Ms. Kwon, or the amount of damages. The Debtors failed to meet this burden. The Debtors provided the bankruptcy court with no contrary admissible evidence. Rather, the Debtors' response focused almost exclusively on the bankruptcy court's alleged lack of jurisdiction.[14]

---

[14] The Debtors argue for the first time in their Reply Brief that the bankruptcy court erred in relying on the declaration of Kelly Milbrant because she added the qualifier "to the best of my knowledge" after declaring under penalty of perjury that her declaration was "true and correct." We decline to consider an argument that was not raised in the bankruptcy court or in the appellant's opening brief. *See Rose Ct., LLC*

Viewing the evidence in the light most favorable to the Debtors, we agree with the bankruptcy court that there were no genuine issues of material fact for trial. Thus, the bankruptcy court did not err in granting EuropaKids's motion for summary judgment.

## C.     The Debtors' appeal was not frivolous.

EuropaKids seeks sanctions against the Debtors based on the alleged frivolousness of the Debtors' appeal. The Panel has power to issue sanctions for a frivolous appeal under Rule 8020(a). Because Rule 8020 mirrors Federal Rule of Appellate Procedure ("Appellate Rule") 38, courts often look to cases applying Appellate Rule 38 when determining whether to find an appeal frivolous and award costs under Rule 8020(a). *See Ghadimi M.D. v. Ashai (In re Ashai)*, 211 F. Supp. 3d 1215, 1240-43 (C.D. Cal. 2016) (collecting cases).

"An appeal is frivolous if the results are obvious, or the arguments of error are wholly without merit." *George v. City of Morro Bay (In re George)*, 322 F.3d 586, 588 (9th Cir. 2003) (quoting *Maisano v. United States*, 908 F.2d 408, 411 (9th Cir.1990)). An appeal does not become "wholly without merit" for purposes of Rule 8020(a) merely because it rested on arguments that the appellate court ultimately found unpersuasive or "novel." *See Orange Blossom Ltd. P'ship v. IBT Int'l, Inc. (In re So. Cal. Sunbelt Devs., Inc.)*,

---

*v. Select Portfolio Servicing, Inc.*, 119 F.4th 679, 688–89 (9th Cir. 2024) (listing circumstances where courts exercise discretion to consider new arguments on appeal); *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived.").

412 F. App'x. 990 (9th Cir. 2011).

Here, EuropaKids argues that Debtors' appeal is sanctionable because their "position is contrary to well-settled Ninth Circuit authority." There is no support for EuropaKids's assertion. The bankruptcy court found there were no Ninth Circuit cases on point. Therefore, we DENY EuropaKids's motion for sanctions.

## CONCLUSION

Based upon the foregoing, we AFFIRM.